Argued and submitted October 18, 1995, affirmed January 3, petition for review
allowed May 28, 1996 (323 Or 265)
See later issue Oregon Reports

Do Mun KIM
and Kwi Ok Kim,
husband and wife,
*Appellants,*

*v.*

MULTNOMAH COUNTY,
by and through its Multnomah County
Community Department of Community Corrections,
and its Multnomah County Department
of Community Corrections,
*Respondents.*

(9302-01079; CA A84073)

909 P2d 886

Patricia Ferrell-French argued the cause and filed the briefs for appellants.

J. Michael Doyle, Assistant County Counsel, argued the cause for respondents. With him on the briefs was Laurence Kressel, Multnomah County Counsel.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiffs appeal from summary judgment that dismissed their claims of negligence and negligence *per se*. ORCP 47. They argue that the trial court erred because there are genuine issues of material fact as to each claim. We affirm.

The following are uncontroverted facts. On or about May 4, 1992, Raymond Lawrence robbed and stabbed plaintiffs in their convenience store. At the time of the crime, Lawrence was on probation arising out of an Assault IV conviction. ORS 163.160.[1] Carrie Kirkpatrick was assigned as Lawrence's probation officer. Sometime in February 1992, Kirkpatrick had issued a probation violation arrest warrant for Lawrence because of his failure to report to her. On April 20, 1992, Lawrence was arrested on four charges of robbery and one charge of unauthorized use of a motor vehicle (UUMV) arising out of unrelated incidents. In the process of arresting Lawrence, the arresting officer discovered the outstanding warrant for Lawrence issued by Kirkpatrick for violation of his probation. On April 28, 1992, Lawrence was indicted on the UUMV charge. However, the robbery charges were dismissed. On that same day, Kirkpatrick learned for the first time that Lawrence was in custody at the Multnomah County Department of Corrections and that the court was holding a probation violation hearing on her warrant the following morning.

At the time of the probation violation hearing, Kirkpatrick was unaware of the fact that Lawrence had been arrested for multiple counts of robbery and that he had been indicted on the UUMV charge. One method by which Kirkpatrick could have learned about the other charges was through an "EPR hit." An "EPR hit" is a transmission sent to probation officers and other interested members of the criminal justice system that informs them of a particular

---

[1] ORS 163.160 provides:

"(1) A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another; or

"(b) With criminal negligence causes physical injury to another by means of a deadly weapon.

"(2) Assault in the fourth degree is a Class A misdemeanor."

person's current criminal activities. When Lawrence was arrested, that information should have been entered into the Law Enforcement Data System, so that Kirkpatrick could have received notification of the arrest through an "EPR hit." Nonetheless, Kirkpatrick never received an "EPR hit" regarding Lawrence's arrests for the robbery and UUMV, nor did she make any other efforts before the probation violation hearing to find out if he had other charges against him.

At the probation violation hearing, the presiding judge asked Kirkpatrick whether Lawrence had any new charges against him, and she replied that she was not aware of any. Kirkpatrick stated in her affidavit in support of defendant's motion for summary judgment that most judges do not consider new charges until after they are disposed of, but she acknowledged that she did not know what the judge presiding over the probation hearing would have done had he known about the arrests. When Lawrence told the court that he had suffered a head injury that prevented him from reporting to his probation officer, the court ordered his probation continued.

Lawrence was not released at that time, a fact that Kirkpatrick apparently knew, because she received a call on April 30 from Lawrence's attorney that Lawrence had still not been released. Kirkpatrick did not know that the reason Lawrence had remained in custody was the UUMV charge. He was arraigned on that charge on April 30, and thereafter was released on his own recognizance. Four days later, Lawrence robbed and assaulted plaintiffs.

Plaintiffs brought negligence and negligence *per se* claims against defendants, alleging that defendants were negligent in failing to inform the judge at the probation violation hearing that Lawrence "had been in custody for two counts of Robbery I and was still in custody awaiting arraignment for one count of [UUMV]." They also allege that defendants were negligent in failing to inform the court at Lawrence's arraignment for UUMV "of Lawrence's custody on the two counts of Robbery I and his Assault IV probation violation warrant, arrest and custody." Finally, they argue that defendants were negligent in failing to issue a detainer warrant against Lawrence which they say could have kept him in jail for up to 15 days.

Defendant moved for summary judgment, arguing that there was no genuine issue of material fact and that, as a matter of law, they were not liable for the intentional criminal acts of a third party. Plaintiffs responded with an affidavit from Robert A. Jackson, who had been the director of the county corrections department until April 10, 1992. In his affidavit, Jackson stated that Carrie Kirkpatrick was a probation officer during his tenure. He also explained that probation officers were required to use various investigative procedures to keep track of probationers. Jackson said:

"9. [Probation officers] each day received a printed 'Booking Register' from the Sheriff's Dept. which indicated the names of all persons booked in jail in the previous 24 hours and the charges against those persons.

"* * * * *

"11. *As part of their investigative duties, all probation officers were required to review the Booking Register each day.* This was an especially important task for a probation officer who had outstanding warrants out on offenders on his or her case load enabling the probation officer to determine whether the warrants had been issued and so that the probation officer could proceed swiftly and efficiently in order to supervise the offender and protect the public.

"12. Additionally, as part of the Department's duty to protect the public safety and pursuant to statutory law, probation officers were given the powers of peace officers in the execution of their duties enabling the probation officer to detain and/or arrest offenders under the Department's supervision. The probation officer was required to detain and/or arrest an offender if the probation officer had 'reasonable grounds' to believe the offender had committed a 'gross violation' of a condition of the offender's probation. A 'gross violation' was defined as a violation of a condition evincing behavior which is causally connected to the commitment offense. 'Reasonable grounds' was defined as information of such credibility based on specific articulable facts that it would induce a reasonably prudent person to use it in the conduct of his/her professional duties. *If the probation officer had reasonable grounds to believe that an offender may have committed a new offense and/or may have violated a condition of the offender's probation, the probation officer was required to detain or arrest the offender if the probation officer had the opportunity.*

"13.   Of course, a probation officer was required to investigate the conduct of an offender on the probation officer's case load if and when the probation officer received or heard any information that the offender may have committed a new offense; the probation officer should then intervene and determine whether the probation officer had reasonable grounds to believe that the offender was in violation and whether the offender should be detained or arrested in order to protect the public community. *It would have been a gross violation of the probation officer's duties to ignore any information or fail to investigate any information that an offender may have committed a new offense or a violation of his probation.*

"14.   During the time I was Director, the Policies & Procedures section 330, dictated detainer and arrest procedures and methods the probation officer should follow in issuing a 'Detention Warrant' which authorized that an offender be held for up to 15 calendar days. If the offender was already housed in the Multnomah County Detention Center, the probation officer should have faxed a Detention Warrant to the Detention Center which would enable the probation officer to have the offender held while the probation officer pursued the investigation." (Emphasis supplied.)

Defendants argue that Jackson's affidavit should not be considered because it does not meet the requirements of ORCP 47 D. ORCP 47 D provides, in part:

"Except as provided by section E of this rule, supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Defendants contend that because Jackson was no longer the director of the department at the time the alleged negligent acts occurred, his testimony is not relevant. Relevant evidence is

"evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401.

Jackson left his position with the department only 10 days before the alleged negligent acts occurred. His statements regarding the procedures that were in effect before April 10,

1992, are some evidence that the same procedures remained in effect from April 20 to May 4, 1992. Defendants' other arguments regarding the admissibility of Jackson's affidavit do not warrant discussion. We conclude that the trial court did not err in considering Jackson's affidavit and that we may consider it on review.

■■ In their first assignment of error, plaintiffs argue that the trial court erred in granting summary judgment on their claim of negligence. That claim and its various specifications are based on *Restatement (Second) of Torts* § 319 (1965). Section 319 provides:

> "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."[2]

The jurisdictions that have adopted section 319 are split on whether it applies to public officials who negligently fail to supervise a third person[3] whom they are required to supervise, as distinguished from those who have custody or control over the third person and thereafter act negligently.[4] In *Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993), the Oregon Supreme Court adopted section 319 and held that it applies to custodians of prisoners, specifically concluding that the State of Oregon Corrections Division had "taken charge of" a prisoner in its custody when the prisoner was on a prison work crew working outside the confines of a correctional facility. In that case, the custodian had the actual ability to control the prisoner's actions and simply failed to exercise that control.

The policy underlying section 319 is that, because custodians or those who have the ability to control third

---

[2] They do not argue that defendants unreasonably created a foreseeable risk of harm under *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987).

[3] *See Division of Corrections v. Neakok*, 721 P2d 1121 (Alaska 1986); *Sterling v. Bloom*, 111 Idaho 211, 723 P2d 755 (1986); *Taggart v. State*, 118 Wash 2d 195, 822 P2d 243 (1992).

[4] *See Grimm v. Arizona Bd. of Pardons & Paroles*, 115 Ariz 260, 564 P2d 1227 (1977); *Seibel v. City & County of Honolulu*, 61 Haw 253, 602 P2d 532 (1979); *Mathes' Estate v. Ireland*, 419 NE2d 782 (Ind App 1981).

persons are able to foresee the risk created by the person under their control, they are required to take precautions accordingly. We think it is more in keeping with the policy underlying the rule to require that the third person be in the defendant's custody or under its control at the time of the negligent act before liability under section 319 attaches. All of plaintiffs' evidence in support of their allegations focuses on defendants' failure to inform the court of certain facts and their failure to issue a detainer warrant against Lawrence.[5] However, the court was the only entity with the ability to control Lawrence's detention or release. We conclude that plaintiffs' evidence of defendants' supervisory duties does not constitute "taking charge" of Lawrence under section 319. The trial court did not err in granting summary judgment on plaintiffs' claim of negligence under the *Restatement*.

Plaintiffs also argue that the court should not have granted summary judgment on their negligence *per se* claim. They contend that certain statutes, administrative rules, and defendants' "policy and procedure manual" establish standards of care and that there are issues of fact as to whether those standards were violated. Defendants argue that, as a matter of law, the statutes and rules upon which plaintiffs rely are not intended to prevent the type of harm that befell plaintiffs.

The elements necessary to state a claim for negligence *per se* are:

"(1)  [defendant] violated a [law or ordinance]; (2) that plaintiff was injured as a result of that violation; (3) that plaintiff was a member of the class of persons meant to be protected by the [law or ordinance]; *and* (4) that the injury plaintiff suffered is of a type that the [law or ordinance] was enacted to prevent." *McAlpine v. Multnomah County*, 131 Or App 136, 144, 883 P2d 869 (1994), *rev den* 320 Or 507 (1995).

Plaintiffs argue that ORS 137.550(2), ORS 137.630, ORS 423.505(2) *et seq*, OAR 291-31-005 and OAR 291-65-007 provide the basis for their negligence *per se* claim, because they impose a duty on the probation officer to supervise

---

[5] ORS 137.550(2) (since amended by Or Laws 1993, ch 680, § 17) required a probation officer to notify the court of the arrest within one judicial day. Thus, in most cases, including this one, the officer could have had "control" of the probationer for only 24 hours.

probationers and express an intent to protect the public of which plaintiffs are members.[6] ORS 137.550(2) and ORS 137.630 respectively detail the rights and duties of a probation officer. ORS 137.550(2) (since amended by Or Laws 1993, ch 680, § 17) provided:

"(2)   At any time during the probation period, the court may issue a warrant and cause a defendant to be arrested for violating any of the conditions of probation. Any probation officer, police officer or other officer with power of arrest may arrest a probationer without a warrant for violating any condition of probation, and a statement by the probation officer setting forth that the probationer has, in the judgment of the probation officer, violated the conditions of probation is sufficient warrant for the detention of the probationer in the county jail until the probationer can be brought before the court. The probation officer, as soon as practicable, but within one judicial day, shall report such arrest or detention to the court that imposed the probation. The probation officer shall promptly submit to the court a report showing in what manner the probationer has violated the conditions of probation."

In *McAlpine*, we concluded that ORS 144.331(1), a statute granting similar authority to parole officers, "was not intended to protect members of the general public from criminal activities perpetrated by parole violators." We said:

"On the contrary, ORS 144.331(1) gives the Board of Parole and Post-Prison Supervision discretion to order the arrest and detention of any parolee whom the Board has reasonable grounds to believe has violated [parole] conditions, such as regular reporting to the parole officer, answering reasonable inquiries, respecting all laws, participating in treatment programs, and maintaining residence and employment. ORS 144.102; ORS 144.270. Authority to issue an arrest order for the violation of conditions such as these does not indicate that the purpose of ORS 144.331(1) is to protect

---

[6] Plaintiffs also cite ORS 137.540(1)(a) (since amended by Or Laws 1993, ch 680, § 16), as statutory support for a negligence *per se* claim. ORS 137.540(1)(a) provided that as a general condition of a sentence of probation, a probationer shall:

"(a) Remain under the supervision and control of the probation department."

We fail to see how a statute that lists as one of a probationer's duties that he submit to a probation department's supervision creates a standard of care for the supervisor.

the public from criminal activities committed by parole violators. The statute does not identify a particular danger to be prevented, nor does it identify any class of persons placed at risk by a parole violator or by the failure of a police officer to make an arrest. The statute merely gives the Board the means to enforce compliance with the conditions of parole and delegates the responsibility for making arrests when ordered by the Board." *McAlpine*, 131 Or App at 145.

Our reasoning in *McAlpine* about ORS 144.381(1) is applicable to ORS 137.550(2). We conclude that ORS 137.550(2) does not supply plaintiffs with the basis for a negligence *per se* claim.

■ Next, plaintiffs point to ORS 137.630 (since amended by Or Laws 1993, ch 14, § 15). ORS 137.630 outlined the general duties of a probation officer, such as making investigations and reports as required by a judge, receiving "under supervision any person placed on probation," and keeping detailed records of work done. Like ORS 137.550(2), ORS 137.630 does not identify a particular danger or class of persons at risk for a probation officer's failure to carry out these duties. Nor does OAR 291-65-007,[7] which lists similar duties to those found in ORS 137.630, and which similarly fails to identify the particular danger or class of persons at risk.

■ Plaintiffs' reliance on ORS 423.505 also fails. ORS 423.505 (since amended by Or Laws 1995, ch 423, § 2) provided:

---

[7] OAR 291-65-007 provides:

"(1) Among the duties of the Corrections Division Field Services Parole and Probation officers articulated by statute are:

"(a) To make investigation in relation to granting, revoking or modifying parole, probation or conditional release as required by the Board of Parole, Courts or Corrections Division;

"(b) To provide supervisory services to persons released on parole, probation, or release residing in this state with the goal of reducing the probability of continued criminal behavior;

"(c) To keep informed concerning conduct and conditions of such persons visiting, requiring reports, and making collateral contacts;

"(d) To make reports to the Board of Parole, Courts and Corrections Division as required; and

"(e) To perform such additional duties as the Administrator may direct.

"(2) The priority of duties and assignments is to be determined by the supervisor."

"It is declared to be the legislative policy of this state to establish and finance with appropriations from the General Fund statewide community correction programs on a continuing basis. The intended purposes of this program are to:

"(1)  Provide appropriate sentencing alternatives;

"(2)  Provide improved local services for persons charged with criminal offenses with the goal of reducing the occurrence of repeat criminal offenses;

"(3)  Promote local management of community corrections programs; and

"(4)  Promote the use of the most effective criminal sanction necessary to administer punishment to the offender, rehabilitate the offender and protect public safety."

Plaintiffs argue that because the statute lists the protection of public safety as an intended purpose of the community correction programs, ORS 423.505 provides them with a statutory cause of action. We disagree. The statute is about the general purposes of community correction programs. It does not purport to state a mandate for the protection of individuals. OAR 291-31-005,[8] which similarly lists the purpose and policy of the community corrections program, likewise does not provide for supervision of a probationer for the protection of individual citizens. Finally, assuming, without concluding, that the department manual was appropriate evidence to consider, it cannot be the basis of a negligence *per se* claim either, because it is neither a law nor an ordinance. *See Cole v. Multnomah County*, 39 Or App 211, 216-17, 592 P2d 221 (1979) (holding that neither a state manual nor a county manual can be the basis for a statutory negligence claim). In sum, we conclude that the statutes and rules relied on by plaintiffs do not provide them with the basis for a negligence *per se* claim. The trial court did not err in granting summary judgment.

Affirmed.

---

[8] OAR 291-31-005 (since amended on August 20, 1992) provided, in part:

"(1) Authority: The authority for this rule is granted to the Director of the Department of Corrections in accordance with ORS 423.020.

"(2) Purpose: To support county community corrections programs that provide appropriate sentencing alternatives and improve local services for persons charged with criminal offenses with the goal of reducing the occurrences of repeat criminal offenses through state/local government cooperative and collaborative efforts * * *."