Argued and submitted January 8, 1997; reassigned September 16, decision of
Court of Appeals and judgment of circuit court affirmed December 17, 1998

Do Mun KIM
and Kwi Ok Kim,
husband and wife,
*Petitioners on Review,*

*v.*

MULTNOMAH COUNTY,
by and through its
Multnomah County Community
Department of Community Corrections,
and its Multnomah County Department
of Community Corrections,
*Respondents on Review.*

(CC 9302-01079; CA A84073; SC S43031)

970 P2d 631

Patricia Ferrell-French, West Linn, argued the cause and filed the briefs for petitioners on review.

J. Michael Doyle, Assistant County Counsel, Portland, argued the cause for respondents on review. With him on the brief was Laurence Kressel, County Counsel.

Charles Robinowitz, Portland, filed briefs for *amicus curiae* Oregon Trial Lawyers' Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

GILLETTE, J.

---

** Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision.

**GILLETTE, J.**

This is a negligence action brought against a county corrections department by plaintiffs who are the victims of a probationer's criminal conduct. There are two issues before the court: First, whether a probation officer exercises sufficient control over a probationer to warrant imposing liability on the corrections department for the probationer's criminal conduct. Second, whether the statute providing for a probation officer's authority and duties establishes a standard of care for probation officers that would allow plaintiffs to recover damages for a violation of the statute. The trial court granted the corrections department's motion for summary judgment and dismissed the action. The Court of Appeals affirmed. *Kim v. Multnomah County*, 138 Or App 417, 909 P2d 886 (1996). We allowed plaintiffs' petition for review and now affirm the decision of the Court of Appeals.

The facts are undisputed. The probationer, Lawrence, was convicted on a misdemeanor assault charge in late 1991 and placed on probation under the supervision of a probation officer, Kirkpatrick. Lawrence failed to report to Kirkpatrick, and she caused a probation violation warrant to be issued in December 1991. Lawrence was arrested on that warrant in February 1992, but he was released from jail on his own recognizance pending a probation revocation hearing. He did not appear at the hearing, and Kirkpatrick caused another warrant to be issued. The second warrant specified that, when Lawrence was apprehended, no bail should be set and Lawrence should not be released on his own recognizance.

Lawrence was arrested again on April 20, 1992, on four charges of robbery in the first degree, arising out of his alleged robbery at knife-point of two convenience stores, and on the outstanding probation violation warrant. He was arraigned the next day and detained in the Multnomah County Department of Corrections Jail pending a probation revocation hearing, which was scheduled for April 29, 1992.

While Lawrence was still in custody, the prosecutor dismissed the robbery charges. At the same time, however, Lawrence also was arrested and indicted for unauthorized

use of a motor vehicle (UUMV), arising out of his alleged use of a stolen vehicle during the commission of the convenience store robberies. Lawrence's arraignment on the UUMV charge was scheduled for April 30, 1992.

Meanwhile, on April 28, Kirkpatrick learned for the first time that Lawrence was in jail and that his probation revocation hearing was set for the next morning. Kirkpatrick could have learned before then that Lawrence was in custody through various means. For example, each time a police officer checks for outstanding warrants for a person, a computerized tracking mechanism is triggered in the Law Enforcement Data System (LEDS) by which a notice is to be sent to probation officers, among others, to inform them of the person's criminal activities. The notice is known as an "EPR hit," for "Enter Probation Record." However, Kirkpatrick never received an "EPR hit" notifying her of Lawrence's arrest on the robbery charges.

In addition, probation offices, including Kirkpatrick's, daily receive a booking register, which is an alphabetical list of all persons booked in the previous 24 hours, with their charges. Each day they also receive an "Alpha List," which is an alphabetical list of all persons in custody as of 4:00 a.m. that day, with their charges. Had Kirkpatrick checked the booking register on April 21 or the Alpha List at any time between April 21 and April 28, she would have learned of the robbery charges against Lawrence. If Kirkpatrick had checked the Alpha List on the morning of the probation revocation hearing, then she would have learned of the additional UUMV charge against Lawrence, and she would have learned that the robbery charges had been dismissed.

Kirkpatrick did nothing to prepare for the probation revocation hearing other than to retrieve Lawrence's "Abscond Status" file. At the hearing, the judge asked both Kirkpatrick and the district attorney whether any new charges had been brought against Lawrence. Both informed the court that they were not aware of any. Lawrence excused his failure to report to Kirkpatrick by claiming that he suffered from a head injury that prevented him from keeping his appointments. The court ordered that Lawrence's probation

be continued, on the condition that he provide Kirkpatrick with medical confirmation of his injury.

Lawrence was not released at that time, however; he continued to be detained, because his arraignment on the UUMV charge was scheduled for the next day. Kirkpatrick was made aware of Lawrence's continued detention later that day through a telephone call from Lawrence's attorney. Still, she did not undertake any further investigation into other charges, and she did not know of or attend the arraignment the next day. At the conclusion of that arraignment, the presiding judge ordered that Lawrence be released on his own recognizance. Lawrence was released that day.

On May 1, 1992, Lawrence was indicted on the two convenience store robberies, and the court issued an arrest warrant. Three days later, police arrested Lawrence at plaintiffs' convenience store, where Lawrence had stabbed plaintiffs while attempting to rob them.

Plaintiffs subsequently brought the present action for negligence and negligence *per se* against Multnomah County, acting by and through its agency, the Multnomah County Department of Community Corrections (collectively, the County). The agency provides probation services in Multnomah County. The complaint alleged that the County was negligent in failing to inform the court at the probation revocation hearing "that Lawrence had been in custody for two counts of Robbery I and was still in custody awaiting arraignment for one count of Unauthorized Use of Vehicle" and in failing to inform the court at the hearing for Lawrence's arraignment for UUMV "of Lawrence's custody on the two counts of Robbery I and his Assault IV probation violation warrant, arrest and custody." In a second "claim for relief," the complaint alleged that those acts violated ORS 137.610, ORS 137.630(1)(a) and (e), and ORS 137.630(2), set out and discussed *post*.[1] Additionally, in the summary judgment proceedings also discussed *post*, plaintiffs alleged that the

---

[1] Plaintiffs' complaint alleges negligence and negligence *per se*, which are simply alternative legal theories of liability for negligence. *See Shahtout v. Emco Garbage Co.*, 298 Or 598, 601, 695 P2d 897 (1985) (phrase "negligence *per se*" can apply only to cases brought on theory of liability for negligence). The complaint, therefore, properly is viewed as stating two *counts* but not, as plaintiffs sometimes erroneously state, as stating two separate claims for relief.

County was negligent in failing to prevent Lawrence's release by issuing a detention warrant pursuant to which he allegedly would have been detained for up to 15 days pending an investigation into his conduct.

The County moved for summary judgment on the ground that, as a matter of law, "neither the relationship between plaintiffs and Multnomah County nor the relationship between Lawrence and Multnomah County supports liability against the county for the injuries suffered by plaintiffs as a result of Lawrence's independent criminal acts." In support of that proposition, the County relied on *Buchler v. Oregon Corrections Division*, 316 Or 499, 853 P2d 798 (1993), in which, according to the County, this court held that there is no duty to control the conduct of another so as to prevent him from causing harm, unless a statute creates such a duty or the duty exists because of a special relationship between the one accused of negligence and either the injured party or the one who committed the harm. Plaintiffs argued that, under *Buchler*, the County was liable for Lawrence's criminal acts, because it negligently failed to control Lawrence even though it had taken charge of him when he came under the County's supervision as a probationer and even though the County knew or should have known that Lawrence was likely to cause bodily harm to others if not controlled. Moreover, plaintiffs argued, relevant statutes impose a duty on the County to protect the public and establish a standard of care against which the County's conduct should be measured. It follows, they argued, that a question of fact existed as to whether the County breached that standard of care.

As noted, the trial court granted summary judgment to the County and dismissed the action. Plaintiffs appealed to the Court of Appeals, essentially repeating and refining the arguments that they had made to the trial court. They argued that section 319 of the *Restatement (Second) of Torts* (1965), which defines a custodian's duty to prevent harm, controls the present case and states an exception to the general rule of nonliability for the conduct of others. Section 319 provides as follows:

> "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if

not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

Plaintiffs argued that Kirkpatrick "took charge" of Lawrence and knew or had reason to know that he was likely to cause bodily harm if not controlled, and yet failed to exercise reasonable care to control him. Additionally, in support of their negligence *per se* count, they argued that a question of fact exists as to whether the County violated ORS 137.540(1)(a), ORS 137.550(2), ORS 137.630, ORS 423.505(2), (3) and (4), OAR 291-31-005 *et seq.*, OAR 291-65-007, and the County's internal policy and procedure manual and, therefore, whether the County was negligent *per se*.

The Court of Appeals rejected both of plaintiffs' arguments, holding that section 319, which this court followed in *Buchler*, would apply only if Lawrence was in the County's custody or under its control at the time of Kirkpatrick's alleged negligent acts. *Kim*, 138 Or App at 424. The Court of Appeals concluded that only the trial court had the ability to control Lawrence's detention or release, and the County's supervisory authority over Lawrence did not constitute "taking charge" of Lawrence for purposes of liability under section 319. *Id.* Turning to plaintiffs' negligence *per se* argument, the court reviewed all the statutes and regulations cited by plaintiffs. The court concluded that none of them identified a particular danger or class of persons at risk because of a probation officer's failure to carry out the officer's duties and, accordingly, none provided a basis for a negligence *per se* claim. *Id.* at 426-27.

■    For the reasons that follow, we affirm the decision of the Court of Appeals.[2] We first address plaintiffs' section 319

[2] In so doing, we do not consider one argument that plaintiffs raise in their briefs before this court, *viz.*, that, based on this court's holding in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987), the County unreasonably created a foreseeable risk of harm through its allegedly negligent conduct. Notwithstanding plaintiffs' arguments to the contrary, we conclude that plaintiffs failed to raise that issue before either the trial court or the Court of Appeals. We have reviewed those portions of the pleadings and briefs to which plaintiffs direct us, and it is clear that, in each instance, plaintiffs confined their arguments to the proper applicability of section 319. Section 319 is an example of a theory of liability based on a "special relationship." By contrast, the general foreseeability theory of liability, outlined in *Fazzolari*, speaks to circumstances in which a special relationship is not present. *See, e.g., Buchler*, 316 Or at 504 (explaining distinction).

argument. As has been discussed, that section provides an exception to the general rule of nonliability for the conduct of others. In *Buchler*, this court first held that the common-law rule restated in section 319 is the law in Oregon. 316 Or at 506. That decision arose out of an action brought by the estate of a victim killed by a state prisoner who was a member of a work crew assigned to a forest camp in a remote rural area. The prisoner escaped from custody by driving away in a state van in which the crew supervisor negligently had left the keys in the ignition. In *Buchler*, there was no dispute that the defendant "took charge" of the prisoner; the only real issue concerning the applicability of section 319 was whether the defendant knew or should have known that the prisoner was "likely to cause bodily harm to others if not controlled." *Id.* at 506-07.

Here, by contrast, the issue is whether, as a threshold matter, the County "takes charge" of a probationer to the extent that it could be liable under section 319 for the probationer's later criminal activity. The Court of Appeals held that that standard requires a custodial relationship between the County and the probationer at the time of the allegedly negligent acts; a merely supervisory relationship, that court held, is insufficient. *Kim*, 138 Or App at 424. For the reasons that follow, we agree.

Implicit in the proposition in section 319 that one has a "duty to exercise reasonable care to *control*" a third person he has "taken charge of" "to prevent him from doing * * * harm" is the notion that one has the legal ability to take charge of that person. In a probation officer-probationer relationship, the probation officer does not have that ability. Within the limits of the conditions of his probation, the probationer is free to come and go as he pleases, when and where he pleases. It is no part of a probation officer's work to follow each probationer to prevent him from harming others. In short, a probation officer does not—indeed, given caseloads, could not—exercise a degree of supervision that permits the conclusion that the relationship between the parties is a form of custody.[3]

---

[3] As evidence that a probation officer exercises a degree of control over a probationer such that the officer effectively "takes charge" of the probationer,

■ Plaintiffs also argue that, even if a probation officer ordinarily does not exercise the requisite degree of control over a probationer, Kirkpatrick *actually had* the ability to control Lawrence under the facts of this case. They argue that Lawrence was in jail at the time of the County's alleged negligent acts and that Kirkpatrick had the actual ability to keep him there, thereby preventing the harm that Lawrence caused to plaintiffs after his release. Plaintiffs assert that, during the entire time that Lawrence was in jail, he was in the *County's* actual custody. The basis for that assertion is that Lawrence was incarcerated because of his arrest on Kirkpatrick's probation violation warrant. From that fact, plaintiffs argue that Kirkpatrick had the actual ability to control Lawrence's conduct in two ways, either of which would have prevented him from harming plaintiffs, but that she negligently failed to do so.

Plaintiffs first argue that Kirkpatrick negligently failed to learn of the additional charges against Lawrence and therefore failed to inform the court of them at the probation revocation hearing. Plaintiffs do not contend specifically that, but for Kirkpatrick's alleged negligence in this regard, the court would not have released Lawrence, but that is the clear implication and necessary corollary to their theory that the County had the actual ability to control Lawrence's conduct so as to prevent harm. Second, plaintiffs argue that, if Kirkpatrick had known of the additional charges against Lawrence, she could have had him arrested and detained for up to 15 days under a detention warrant issued pursuant to her authority under ORS 137.550(2), ORS 137.620, ORS 137.630(2), and the County's policy manual, with the result that Lawrence would have been in custody at the time of the crimes against plaintiffs.[4]

---

plaintiffs point to the fact that a probation officer can, among other things, impose sanctions on a probationer, search his home or his person without a warrant, and cause warrants to be issued for the probationer's arrest if the probationer violates a condition of his probation. Although the existence of those powers demonstrates that probation officers have the ability to compel a probationer's compliance with the conditions of his probation, they do not permit the inference that a probation officer can control a probationer's conduct in such a way as to prevent him from harming others. By contrast, in a custodial relationship, a custodian is responsible for controlling the person's activities and is required to, and actually has the legal ability to, take precautions to prevent the person from doing harm.

[4] Plaintiffs state several times in their brief to this court that the County was negligent in failing to know that it had the ability to control Lawrence's conduct

■   As a preliminary matter, we disagree that Lawrence was in the County's custody when he was in jail following his arrest on Kirkpatrick's probation violation warrant. Probation officers do have the authority to arrest a probationer, if they have reason to believe that the person has committed a probation violation. ORS 137.550(2); ORS 137.620. However, their authority to hold a probationer in custody stops when the person is delivered to the jail. Thereafter, the custodian is the jailer, not the probation officer. There is no allegation here of any negligent act by the jailer.

   We also do not agree that, under either of plaintiffs' theories, the County had the ability to control Lawrence's conduct while he was in jail, by preventing his release, so as to prevent him from harming plaintiffs. First, if Kirkpatrick had obtained all the information available to her at the probation revocation hearing, she presumably would have told the judge that there was a UUMV charge pending against Lawrence and that robbery charges had been brought but had been dismissed (subject to later indictment). The judge, not Kirkpatrick, then would have had to decide whether to release Lawrence. It was not within Kirkpatrick's power to revoke Lawrence's probation and, therefore, she did not have the ability to control his conduct by preventing his release.

   Additionally, even if the judge had been provided with the relevant information, it is not clear that he would have ruled differently, because the robbery charges were not pending against Lawrence at the time of the hearing, and the only current charge was for UUMV. In light of the fact that the judge at the UUMV arraignment hearing the next day also released Lawrence on his own recognizance, it is unlikely that Kirkpatrick's disclosure of the existence of the UUMV charge would have affected the outcome of the probation revocation hearing. Moreover, plaintiffs suggest that the judge actually *was* made aware by defense counsel at the probation revocation hearing that additional charges were

---

*during the 10 days he was in jail.* Of course, Lawrence *was* controlled adequately while in jail; his crimes that are the basis for this action occurred after he was released. Therefore, we understand plaintiffs statements in that regard to relate to their argument that Kirkpatrick should have exercised her authority during the period of Lawrence's incarceration to arrest and detain him, as discussed in the text.

pending against Lawrence, but released him anyway.[5] Under those circumstances, it is clear that Kirkpatrick did not have the ability to control Lawrence's release in any legally significant manner.

Second, plaintiffs' assertion that Kirkpatrick had the authority, under ORS 137.550(2), ORS 137.620, and ORS 137.630(2) and the County's manual, to arrest Lawrence while he was in jail and detain him for up to 15 days is incorrect. ORS 137.620 simply provides that probation officers have the powers of peace officers in the execution of their duties. ORS 137.630(2) provides that probation officers shall have the duties provided by County rules, and the manual does not confer any authority different than that provided by the relevant statutes.

ORS 137.550(2) is more specific, but does not grant to probation officers the powers that plaintiffs suggest such officers have.[6] That section provides:

"Any probation officer, police officer or other officer with power of arrest may arrest a probationer without a warrant for violating any condition of probation, and a statement by the probation officer setting forth that the probationer has, in the judgment of the probation officer, violated the conditions of probation is sufficient warrant for the detention of the probationer in the county jail until the probationer can be brought before the court[.] * * * [T]he probation officer, as soon as practicable, *but within one judicial day*, shall report such arrest and detention to the court that imposed the probation."

(Emphasis added.) Any authority of a probation officer to detain a probationer suspected of violating a condition of probation thus is limited to "one judicial day." Thereafter, pursuant to ORS 137.550(3), it is up to a judge to determine, within the first 36 hours of custody, whether the probationer

---

[5] Plaintiffs state that Kirkpatrick admitted that she did not investigate whether other charges were pending against Lawrence despite the fact that, at the probation revocation hearing, she overheard part of a conversation between the judge and Lawrence's defense counsel alluding to additional charges against Lawrence.

[6] ORS 137.550(2) has been amended since the time of the events at issue in this case, but the amendments are not pertinent to the resolution of the issues before the court.

should be held pending a probation revocation hearing or released on condition that the probationer later appear at such a hearing. The statute further provides that the probationer shall be released from custody if the probation revocation hearing is not held within 14 days of the arrest or detention. ORS 137.550(5).

It follows from the foregoing that it is true that, had Kirkpatrick been more vigilant on April 21, 1992, she possessed the statutory authority to arrest Lawrence for violating a condition of his parole. However, that power was preempted, essentially, when the police officer who arrested Lawrence for the convenience store robberies also arrested him for the probation violation. Lawrence was brought before a court immediately, in compliance with ORS 137.550(3), a probation revocation hearing was set for April 29, 1992, and Lawrence was detained in the interim. Kirkpatrick did not have any authority under ORS 137.550 to detain Lawrence beyond the date of the probation hearing.

Moreover, even if it were within Kirkpatrick's power to rearrest Lawrence while he was in detention and to set the hearing scheduling procedure in motion again pending an investigation into the other charges, it would have remained up to the judge, not Kirkpatrick, to determine whether Lawrence should have been released in the interim. Neither Kirkpatrick nor the County had the ultimate power to control Lawrence's release through the issuance of a detention warrant. It follows that they were not in a position to prevent the harm that befell plaintiffs.

On the basis of the foregoing, we conclude that neither Kirkpatrick nor the County "took charge" of Lawrence in such a way that either had the ability to control him so as to prevent him from doing the harm about which plaintiffs complain. Accordingly, section 319 of the *Restatement* is inapplicable in this case to confer liability on the County for Lawrence's independent criminal acts. The decision of the Court of Appeals upholding the trial court's order granting summary judgment on that point was correct.

■     We turn to plaintiffs' negligence *per se* theory. Plaintiffs correctly state that, if a statute prescribes a particular standard of care, then it may be appropriate for a court to

adopt that statute as the standard to be applied in a common-law tort action. *See Bellikka v. Green*, 306 Or 630, 650, 762 P2d 997 (1988) (a statute can be used to establish a proper standard of care and to show that the defendant met or failed to meet that standard). However, to this point, all parties (and the Court of Appeals) appear simply to have assumed that the pertinent statutes do, in fact, establish a standard of care and that the only issue before the court is whether that standard was violated.[7] We do not believe that such an assumption is warranted in this case. Rather, it is appropriate to begin our analysis by considering, instead, whether any of the statutes relied on by plaintiffs establish a standard of care for probation officers. Only if such a standard is established would we proceed to the next level of analysis, *viz.*, consideration whether plaintiffs are within a class of persons that the legislature intended to be protected and whether the harm that befell them is of the kind that the statute was intended to prevent. *See Bob Godfrey Pontiac v. Roloff*, 291 Or 318, 326, 630 P2d 840 (1981) (stating foregoing as the test for determining whether a violation of a standard of conduct imposed by a statute constitutes negligence *per se*); *see also Scovill v. City of Astoria*, 324 Or 159, 173, 921 P2d 1312 (1996) (to the same effect).

As noted, the only statutes that plaintiffs identified in the trial court as possible sources for a standard of care are ORS 137.610, ORS 137.630(1)(a) and (e), and ORS 137.630(2). The question before us, then, is whether ORS 137.610, ORS 137.630(1)(a), ORS 137.630(1)(e), or ORS 137.630(2) provides a foundation for plaintiffs' negligence *per se* claim. In *Shahtout v. Emco Garbage, Co.*, 298 Or 598, 601, 695 P2d 897 (1985), we held that a statute establishes the standard of care if it "so fixes the legal standard of conduct that there is no question of due care left for a factfinder to determine." In such a case, "noncompliance with the [statute] is negligence as a matter of law."

---

[7] For example, in evaluating plaintiffs' assertion of negligence *per se*, the Court of Appeals began and ended by considering whether the legislature intended the statutes and rules upon which plaintiffs rely to protect persons like plaintiffs from the type of injuries they in fact suffered. *Kin.* 138 Or App at 424-27. That analysis appears to take as a given that the statute that the court reviewed prescribe a standard of care for probation officers.

The first statute that plaintiffs referenced, ORS 137.610, is disposed of easily. That statute provides that a "judge * * * may request at any time the staff of the Department of Corrections to perform any of the duties which might be required of a probation officer." A statute that authorizes a judge to request a probation officer to do something cannot establish a standard of care for probation officers.

The pertinent portions of ORS 137.630 provide as follows:

"(1) The duties of probation officers * * * shall be:

"(a) To make such investigations and reports under ORS 137.530 as are required by the judge of any court * * * [in] which the officer is appointed to serve.

"* * * * *

"(e) To keep detailed records of the work done and to make such reports to the courts and to the Department of Corrections as such courts require.

"* * * * *

"(2) Probation officers of the Department of Corrections shall have the duties as specified by rule adopted by the Director of the Department of Corrections."

ORS 137.630(2), which merely provides that probation officers have such duties as may be provided by regulation, does not establish a standard of care. Neither is the statutory duty set out in ORS 137.630(1)(a) and (e) to make investigations and reports as a judge may from time-to-time require sufficiently specific to "so fix the legal standard." Even plaintiffs themselves characterize the relevant statutes as requiring Kirkpatrick only "to exercise reasonable care in supervising and controlling Lawrence in order to protect the public." Under the circumstances, then, those statutes do not provide a foundation for plaintiffs' negligence *per se* claim. It follows that the trial court did not err in granting, and the Court of Appeals did not err in affirming, the award of summary judgment to the County on that issue.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.