Argued and submitted November 3, 1999, reversed and remanded April 12, 2000

Robert McALPINE,
*Appellant,*

*v.*

MULTNOMAH COUNTY,
*Respondent.*

(C93-0353CV; CA A90656 (Control))

Judith McALPINE,
*Appellant,*

*v.*

MULTNOMAH COUNTY,
*Respondent.*

(C93-1019CV; CA A90657)
(Cases Consolidated)

999 P2d 522

J. William Savage argued the cause for appellants. With him on the opening brief was Rieke & Savage, P.C. On the reply brief were Paul G. Ellis and Rieke & Savage, P.C.

Susan M. Dunaway, Assistant County Counsel, argued the cause for respondents. With her on the brief was Thomas Sponsler, County Counsel, for Multnomah County, Oregon.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

In these consolidated negligence actions, plaintiffs appeal from a judgment dismissing their complaints for failure to state ultimate facts sufficient to constitute a claim. ORCP 21 A(8). The issue is whether defendant Multnomah County may be held liable for the harm plaintiffs suffered at the hands of Charlesworth, a parolee, based on section 319 of the *Restatement (Second) of Torts* (1974), or because defendant's actions created a reasonably foreseeable risk that plaintiffs would suffer such harm. We reverse.

Previously, we affirmed the dismissal of plaintiff Robert McAlpine's complaint against defendants City of Portland and Regional Organized Crime Narcotics Agency. *McAlpine v. Multnomah County*, 131 Or App 136, 883 P2d 869 (1994), *rev den* 320 Or 507 (1995) (*McAlpine I*). As before,

> "[i]n reviewing a dismissal for failure to state a claim, we are limited to the facts stated in the complaint. *Erikson v. Christenson*, 99 Or App 104, 106, 781 P2d 383 (1989), *rev dismissed* 311 Or 266 (1991). We accept as true the allegations in the complaint and all reasonable inferences that may be drawn from them. *Glubka v. Long,* 115 Or App 236, 238, 837 P2d 553 (1992). A pleading that contains an allegation of material fact as to each element of the claim for relief, even if vague, is sufficient to survive a motion to dismiss. *Mazurek v. Rajnus,* 253 Or 555, 557-58, 456 P2d 83 (1969); *Erikson v. Christenson, supra,* 99 Or App at 106." *McAlpine I,* 131 Or App at 138.

Plaintiff Robert McAlpine's first amended complaint alleges, in part:[1]

> "*Claim for Relief*
>
> "* * * * *
>
> "3.
>
> "On or about August 22, 1986, a person known as Brian Keith Charlesworth ('Charlesworth') was paroled from the

---

[1] Plaintiff Judith McAlpine's second amended complaint differs only in the particulars related to Charlesworth's assault on her and the damages sought, neither of which affects our review under ORCP 21 A(8).

Oregon State Penitentiary following a conviction for Delivery of a Controlled Substance, Schedule II. * * *

"4.

"From on or about December, 1986, the parole officer knew or had reason to know that Charlesworth had a history of violent offenses which included adult and juvenile convictions for person-to-person crimes such as Armed Robbery, Armed Bank Robbery, Possession of a Gas Bomb, and Assault in the First Degree. * * * From on or about December, 1986, the parole officer also knew or had reason to know that Charlesworth had returned to dealing in drugs.

"* * * * *

"6.

"Pursuant to the parole officer's report and recommendation, the Oregon Board of Parole issued a 'no bail' arrest warrant for Charlesworth, on or about January 21, 1987, for violation of the conditions of his parole.

"7.

"On July 1, 1991, the parole officer for Charlesworth became an employee of Multnomah County, Oregon, but continued to have the responsibility of supervising Charlesworth. The parole officer for Charlesworth became an employee of Multnomah County due to a change in the law which transferred the responsibility for parole and probation supervision in Multnomah County from the State of Oregon to Multnomah County.

"8.

"On August 6, 1991, Charlesworth was arrested in Washington County, Oregon on new criminal charges and outstanding warrants which included a felony drug charge of Possession of a Controlled Substance, Schedule II (Methamphetamine), Carrying a Concealed Weapon, Driving While Under the Influence of Intoxicants, Criminal Mischief, and Failure to Appear. After he was arrested on these criminal charges, Charlesworth was served with the 'no bail' parole violation warrant.

"9.

"From on or about August 6, 1991, the parole officer knew or had reason to know that Charlesworth had these new criminal charges pending against him. From on or about August 6, 1991, the parole officer also knew or had reason to know that if Charlesworth was dealing drugs, using illegal drugs, carrying concealed weapons and driving while intoxicated, that he presented a danger to the community and should be returned to prison.

"* * * * *

"11.

"At all material times, the parole officer had the duty and responsibility of preparing parole violation reports in a timely manner to report new criminal activity. This duty and responsibility included preparing parole violation reports for parolees such as Charlesworth who were charged with new crimes while on parole.

"12.

"Before the parole violation hearing was held on August 19th, the parole officer was asked to prepare a new parole report which covered Charlesworth's new charges. However, between August 6th and August 19th, 1991, the parole officer took no action whatsoever to prepare or issue any new parole violation reports indicating that Charlesworth had new criminal charges, * * * [or] expressing the parole officer's opinion that Charlesworth presented a danger to the community and should be returned to prison. During this time, the parole officer knew or had reason to know that by not preparing such a report Charlesworth would probably be released from custody.

"13.

"As a result of the parole officer's careless or intentional failure to prepare a new parole violation report, the hearings officer who considered whether to release Charlesworth from the 'no bail' parole hold did not consider Charlesworth's new criminal charges in deciding whether to release Charlesworth on the parole violations matter. As a result, the hearings officer lifted the 'no bail' parole hold.

Immediately thereafter, Charlesworth posted $3,000 bail on his pending criminal charges and was released.

### "14.

"Had the parole officer issued a new parole report before the August 19th hearing covering Charlesworth's new charges and indicating that Charlesworth presented a danger to the community and should be returned to prison, Charlesworth would have remained in custody and not been released.

"* * * * *

### "20.

"On at least September 9 and September 23, 1991 Charlesworth made appearances in court at the Washington County Courthouse on his pending criminal charges.

### "21.

"If the parole officer had notified the Court in Washington County, or the Sheriff in Washington County, or the District Attorney's Office in Washington County that a new arrest warrant [issued by the parol board on August 26, 1991] was outstanding and that Charlesworth should be taken into custody, Charlesworth would have been arrested and taken into custody in September at one of his court appearances.

"* * * * *

### "23.

"Due to the negligence of defendant Multnomah County as set forth herein, Charlesworth was released on or about August 19, 1991. He remained at large until October 26, 1991."

Plaintiffs allege that the harm inflicted on them by Charlesworth, during a traffic related altercation, was caused by the negligent conduct of defendant Multnomah County. Defendant moved to dismiss plaintiffs' complaints pursuant to ORCP 21 A(8). The trial court granted defendant's motion because, in the court's view, the crimes that led to Charlesworth's arrest in Washington County—possession

of a controlled substance, carrying a concealed weapon, driving under the influence of intoxicants, and criminal mischief—did not make it reasonably foreseeable that Charlesworth would assault plaintiffs.[2]

In their sole assignment of error, plaintiffs argue that the trial court erred in dismissing their complaints because, according to plaintiffs, both contain facts sufficient to state a claim for negligence. Plaintiffs articulate two theories of liability that they contend are supported by the facts specifically alleged in the complaints. First, plaintiffs argue that the facts alleged are sufficient to establish that defendant's agent, a parole officer, failed to exercise the requisite care in controlling Charlesworth, as defined by section 319 of the *Restatement (Second) of Torts* (1974).[3] Alternatively, plaintiffs argue that the facts alleged are sufficient to establish that the parole officer's conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff[s]." *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987).

Defendant responds that our review in this case is controlled by *McAlpine I* under the doctrine of the law of the case. Alternatively, defendant argues that plaintiffs' complaints do not state claims for negligence. Specifically, defendant contends that plaintiffs failed to allege the elements of a claim under section 319 and that plaintiffs' claims under the principles of general foreseeability are precluded by *Restatement* section 315.

■ Defendant argues first that, under the doctrine of the law of the case, we may not consider assertions of fact contrary to our findings in *McAlpine I* where we "made specific findings regarding allegations made against defendants." *See Deyoe v. Holloway*, 96 Or App 105, 106, 771 P2d 652 (1988),

---

[2] The basis for the trial court's ruling was stated orally at the conclusion of the hearing on defendant's motion to dismiss. The trial court did not address, orally or in writing, plaintiffs' argument that defendant was liable under section 319 of the *Restatement (Second) of Torts* (1974).

[3] Although Charlesworth was a state parolee, Multnomah County does not argue that it is an improper party. In paragraph seven of their complaints, as recited above, plaintiffs allege that, before any negligence occurred, a change in the law transferred the parole officer responsible for supervising Charlesworth from state employment to Multnomah County employment.

*rev den* 308 Or 158 (1989) (holding that an earlier appellate decision, interpreting a partnership agreement, was binding on the same parties in the later appeal). However, any allegations made against Multnomah County in *McAlpine I* were not reviewed by this court because, as defendant acknowledges, Multnomah County was not party to that appeal *McAlpine I*, 131 Or App at 138 n 1. Moreover, plaintiffs have amended their complaints, alleging substantially different facts from those reviewed in *McAlpine I*. Because defendant was not a party to *McAlpine I*, and because the complaints now at issue differ substantially from the one reviewed previously, the law of the case doctrine plays no role here.

We proceed to defendant's alleged liability under *Restatement* section 319. That section provides:

> "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

To state a claim under section 319, plaintiffs must plead facts as to three elements. *Mazurek,* 253 Or at 557-58. Those elements are:

> "(1) [T]he defendant had 'taken charge' of [Charlesworth]; (2) the defendant knew or should have known that [Charlesworth] was likely to cause bodily harm to others if not controlled; and (3) the defendant failed to exercise reasonable care to control [Charlesworth] to prevent [him] from doing harm to others." *Brown v. Washington County,* 163 Or App 362, 370, 987 P2d 1254 (1999).

Under section 319, a person "takes charge" of another when a custodial relationship exists. *Buchler v. State of Oregon,* 316 Or 499, 506, 853 P2d 798 (1993) (stating that section 319 defines a custodian's duty in Oregon). Probation officers, acting in their supervisory capacity, are not custodians for the purpose of section 319 liability because, in that role, they do not exert the requisite degree of control over their charges. *Kim v. Multnomah County,* 328 Or 140, 147-48, 970 P2d 631 (1998). That principle extends to parole officers acting in their supervisory capacity. Plaintiffs argue, nevertheless, that section 319 liability should attach here

because Charlesworth was in custody at the Washington County Jail and was released only as a result of the parole officer's negligence. That argument is foreclosed by *Kim. Id.* (the risk of liability under section 319 attaches to the actual custodian). Because Charlesworth was not in the parole officer's custody when the alleged negligence occurred, defendant had not "taken charge" of Charlesworth within the meaning of section 319. Thus, plaintiffs' complaints do not allege facts as to the first element of section 319, and the trial court's dismissal on that point was not error.

■      We turn to plaintiff's alternative theory—*i.e.*, that even if liability could not be based on a "special relationship" under section 319, defendant could nevertheless be liable because its conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari,* 303 Or at 17.[4] Defendant responds that, even if *Fazzolari* could be read to endorse such an alternative theory of "general foreseeability" liability in the context of custodial relationships, the Supreme Court repudiated that approach in *Buchler*. In particular, it is defendant's position that, when the Supreme Court expressly adopted section 319 in *Buchler*, 316 Or at 506, it necessarily adopted section 315 as the law of Oregon. Section 315 provides:

> "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> "(a)   a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> "(b)   a special relation exists between the actor and the other which gives to the other a right to protection."

Defendant contends that the Supreme Court could not have intended to adopt section 319—an exception to section 315, *Buchler,* 316 Or at 505—without also adopting section 315, reasoning that exceptions do not exist in a vacuum and that,

---

[4] As the Supreme Court observed in *Buchler, Fazzolari's* reference to liability in negligence "based on the foreseeability of harm alone" is *dictum. Buchler,* 316 Or at 508. Rather, "[t]he actual holding in *Fazzolari* was based on a special relationship between school officials and students required to attend that school." *Id.*

in the absence of the general rule, any exception to that rule would lack force. Thus, according to defendant, section 315 is the law in Oregon and, as such, operates to preclude recovery under plaintiffs' alternative theory of general foreseeability.

*Buchler*, on which defendant's position depends, stands for precisely the opposite proposition: In *Buchler,* the court, after addressing some of the plaintiffs' claims under the rubric of section 319 and finding no liability, proceeded to assess liability with respect to other claims under a "general foreseeability" analysis. *Buchler*, 316 Or at 507-14. That is, the absence of liability based on a "special relationship" under section 319 did *not* foreclose resort to general foreseeability. *Id*. That analysis would have been unnecessary— and, indeed, erroneous—if defendant's understanding of *Buchler* were correct.[5]

We note, moreover, that *Fazzolari* itself recognized third-party liability under the principles of general foreseeability and that we have previously and explicitly rejected the view that *Buchler* somehow repudiated resort to those principles in cases encompassed by the general rule of nonliability posed in section 315. In *Faverty v. McDonald's Restaurants*, 133 Or App 514, 521-22, 892 P2d 703 (1995), *rev dismissed* 326 Or 530 (1998), we affirmed an award of damages against the defendant employer for injuries to a motorist caused by an off-duty employee, observing that,

> "[*t*]*hree members* of the court [in *Buchler*] suggested that *Fazzolari* simply ought to be overruled. However, the majority of the court expressly declined to do that. Accordingly, at least until one more vote emerges on the Supreme Court to overrule *Fazzolari*, we are constrained to apply it." (Emphasis in original.)

We adhere to that conclusion.[6]

---

[5] In *Kim*, a third-party negligent supervision case that followed *Buchler*, the Supreme Court declined to address the plaintiff's general foreseeability claim because it was not argued below, not because section 315 precluded it. *Kim*, 328 Or at 147 n 2.

[6] The continuing viability of common-law negligence in the context of third-party liability was recently affirmed in *Grady v. Cedar Side Inn, Inc.*, 330 Or 42, 997 P2d 197 (2000) (holding that a passenger, injured in an automobile accident, has a third-party common-law negligence cause of action against a tavern owner for serving alcohol to the visibly intoxicated driver). *But see Washa v. DOC*, 159 Or App 207, 979 P2d 273, *rev allowed* 329 Or 479 (1999) (De Muniz, J., concurring).

■     Defendant argues next that, even if plaintiffs' resort to general foreseeability is not precluded by section 315, their complaints fail to allege facts sufficient to state such a claim. *Fazzolari* requires a determination of whether defendant's conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." 303 Or at 17. In *Buchler*, the Supreme Court said that,

> "[w]hile it is generally foreseeable that criminals may commit crimes, * * * *that level of foreseeability* does not make the criminal's acts the legal responsibility of everyone who may have contributed in some way to the criminal opportunity." 316 Or at 511 (emphasis added).

Implicit in the court's statement is the idea that *some* level of foreseeability does make a supervisee's criminal act the supervisor's legal responsibility. According to defendant, that level is reached only when the harm-producing crime is rationally related to the crime underlying the supervisory relationship. Defendant cites two cases in support of this proposition. In *Washa v. DOC*, 159 Or App 207, 979 P2d 273, *rev allowed* 329 Or 479 (1999), we affirmed a judgment for damages because it was foreseeable that an offender who absconded from parole, imposed for a previous violent sexual assault, would sexually assault the plaintiff's decedent. In *Zavalas v. Dept. of Corrections*, 106 Or App 444, 809 P2d 1329 (1991), a woman on probation for drug possession killed two children in a traffic accident. She later tested positive for cocaine, heroin, and prescription drug use. We reversed the trial court, holding that summary judgment was precluded by issues of material fact concerning whether the offender's probation officer was negligent in failing to report earlier known drug violations.

However, nothing in *Washa* or *Zavalas* limits our consideration to the underlying crime. It happened in those cases that, based on the underlying crime, a factfinder could reasonably find that each supervisor knew enough to foresee the resulting harm. However, in *Buchler*, the Supreme Court examined the nonviolent nature of the offender's entire criminal history before concluding that the murder of two people was not a reasonably foreseeable consequence of leaving the keys in the vehicle used to escape. Similarly, this court

recently held that a third-party defendant could be found liable for negligence under the principles of general foreseeability based on a defendant's knowledge of an offender's violent criminal history. *Brown*, 163 Or App at 375 (a reasonable jury could find that failure to warn plaintiff's decedent of offender's escape unreasonably created a foreseeable risk that he would be violently assaulted).

Defendant acknowledges that the concept of foreseeability refers to generalized risks of the type of incidents rather than the predictability of the actual sequence of events. *Fazzolari*, 303 Or at 21. In paragraph four of their respective complaints, plaintiffs allege that the parole officer knew or had reason to know of Charlesworth's violent history, which includes, *inter alia*, armed robbery, armed bank robbery, possession of a gas bomb, and assault in the first degree. In paragraph nine, plaintiffs allege that defendant knew or had reason to know that Charlesworth presented a danger to the community. Plaintiffs' complaints adequately allege facts as to the element of foreseeability, *Mazurek*, 253 Or at 557-58, and we cannot say as a matter of law that the harm plaintiffs suffered as a result of Charlesworth's assaultive conduct was not reasonably foreseeable.[7] Therefore, the trial court erred in dismissing plaintiffs' complaints.

Reversed and remanded.

---

[7] Defendant reiterates the basis of the trial court's ruling, that the parole officer could not reasonably foresee the harmful outcome based on the nonviolent charges pending against Charlesworth in Washington County. That is evidence that a factfinder may consider, but it is not dispositive as a matter of law.