Argued and submitted January 28, affirmed September 15, 2004

Bernard MILLER
and Diane Miller,
*Appellants,*

*v.*

MILL CREEK HOMES, INC.,
an Oregon corporation;
Homestreet Bank,
a Washington corporation;
and Daniel Larson,
*Defendants,*
*and*

Michael S. GOLD,
*Respondent.*

MILL CREEK HOMES, INC.,
an Oregon corporation,
*Third-Party Plaintiff,*

*v.*

Vasile P. VARGA,
dba Euro Plumbing,
*Third-Party Defendant.*

C02-03-72CV; A121103

97 P3d 687

Michael J. Morris argued the cause and filed the briefs for appellants.

Alan Gladstone argued the cause for respondent. With him on the brief was Abbott, Davis, Rothwell, Mullin & Earle, P.C.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Plaintiffs brought several claims against defendants after a flood damaged their home. Plaintiffs settled their claims against all defendants except Gold, their insurance agent. They appeal from a judgment for Gold, assigning error to the trial court's grant of summary judgment in Gold's favor on their negligence claim against him. We examine the record in the light most favorable to plaintiffs to determine whether there are genuine issues of material fact and whether Gold was entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). We affirm.

Plaintiffs first used Gold's services in 1991 when they purchased casualty homeowners insurance from Farmers Insurance Company of Oregon (Farmers). In 2001, plaintiffs sold the home covered by that policy and purchased a newly constructed home in Portland. They purchased a Farmers policy for their new home from Gold. Plaintiffs anticipated that the new policy would take effect on July 2. Based on that understanding, they closed on the purchase of their new home on the morning of July 3. Within hours of the closing, plaintiffs learned that their new home had been damaged by a flood.

Plaintiffs contacted Gold on July 5 about the damage to their home. Gold told them that the insurance coverage for their new home was not in effect at the time of the flood. He explained that, based on a conversation with plaintiffs' lender about the expected closing date, he had made July 5 the effective date for the Farmers policy. Gold further told plaintiffs that he would not submit a claim to Farmers on plaintiffs' behalf because of the effective date of the policy. Plaintiffs thereafter contacted Farmers directly to pursue their insurance claim. On July 19, a Farmers adjuster told plaintiffs that Farmers would accept their claim.

Plaintiffs subsequently filed an action that alleged that Gold was negligent in the following particulars:

"(1) Gold failed to notify plaintiffs that he was changing the effective date of the insurance coverage from July 3, 2001 to July 5, 2001.

"(2)   Gold failed to notify the escrow agent that he was changing the effective date of the insurance coverage from July 3, 2001 to July 5, 2001.

"(3)   Gold informed plaintiffs that they had no insurance coverage after the flood, notwithstanding that he had the authority to bind the coverage.

"(4)   Gold failed and refused to notify Farmers of plaintiffs' claim."

Gold moved for summary judgment on plaintiffs' claim, making several arguments. First, he contended that he was Farmers' rather than plaintiffs' agent,[1] and for that reason did not owe plaintiffs a special duty that could give rise to liability for the economic damages plaintiffs sought. He also argued that plaintiffs' damages were not recoverable as a matter of law. Finally, he argued that plaintiffs had failed to create an issue of material fact about whether they had actually incurred any economic damages.

Plaintiffs responded that, although Gold may have been Farmers' employee and agent, he was also their agent because he "agreed to act as the insured's agent in the event of a loss," he "described himself as 'your local agent' " to plaintiffs, and he gave plaintiffs a Farmers brochure that described Gold as a personal agent and that "clearly state[d] that [Gold] will advocate for the insured when there is a loss." Plaintiffs also argued that, because Gold was their agent, their purely economic losses were recoverable and that there was evidence in the summary judgment record that created an issue of fact about whether Gold had caused plaintiffs' economic damages.

The trial court granted Gold's motion. Plaintiffs appeal, renewing the arguments that they made below. Plaintiffs also argue, citing *Federal Savings and Loan Ins. Corp. v. Johnson*, 97 Or App 250, 253, 776 P2d 24 (1989), that we should treat their complaint as though it includes a claim

---

[1] Specifically, Gold argued that he is a "captive agent" for Farmers. A "captive agent" is an agent who generally sells only one company's policies to insureds. *See Lewis-Williamson v. Grange Mutual Ins. Co.*, 179 Or App 491, 495, 39 P3d 947 (2002).

for negligent misrepresentation because evidence in the summary judgment record justifies amending their complaint to allege such a claim. We need not resolve that pleading issue because we conclude that plaintiffs failed to present evidence sufficient to create an issue of fact about whether Gold had a relationship with plaintiffs that would make him liable to them for economic damages resulting from his negligence.

■ ■ We initially note that a "negligence claim for the recovery of economic losses caused by another must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992) (footnote omitted). The duty of an agent to act with due care and in the principal's interest is one such duty. Accordingly, we turn to whether the record shows that there is an issue of fact about whether Gold was plaintiffs' agent.

The parties do not dispute that Gold was Farmers' employee and agent. As Farmers' agent, Gold owed Farmers a duty of loyalty and was therefore obligated to act in Farmers' interest. Generally, an agency relationship is created by " 'the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' " *Rough & Ready Lumber v. Blue Sky Forest Products*, 105 Or App 227, 231, 804 P2d 498 (1991) (quoting *Restatement (Second) of Agency* § 1 (1958)). A person can be the agent of multiple parties in a single transaction. *Restatement* at § 14L(1). However, where a person is the general employee of one principal, the critical inquiry into whether that person is also or solely the agent of another party is

> "whether it is understood [by the general employer, the agent, and the other party] that the agent owes primary allegiance to the general employer or to the other party. In answering [that] question, there is an inference that the general employment continues. * * * Where * * * the agent is carrying out the purposes of the general employer, the fact that the agreement between the agent and an alleged second employer specifies that he is to be the agent of the second employer, does not necessarily have that effect."

*Restatement* at § 14L comment a; *see also Lewis-Williamson v. Grange Mutual Ins. Co.*, 179 Or App 491, 497, 39 P3d 947 (2002) (concluding that an insurance agent employed by an insurance company was not the insured's agent where the record established no issue of fact about whether the insurance agent owed primary allegiance to the insured rather than to his employer). The formation of an agency relationship with a person who is known to be another's agent must satisfy that standard because, given the duties that an employee owes to the employer, the representation by the employee of another party in transactions with the employer can give rise to conflicting duties owed to both the employer and the new principal. For example, if Gold were both Farmers' and plaintiffs' agent, he would owe them both a duty of loyalty and be required to act in the interests of each whenever there was a conflict between them.

■ We therefore examine the record to determine whether it reveals that there is an issue of fact about whether Gold agreed to represent plaintiffs' interest, whether plaintiffs asked Gold to represent their interests, and, critically, whether plaintiffs, Gold, and Farmers understood that Gold owed primary allegiance to plaintiffs rather than to Farmers.

In making that determination, we are aided by our analysis in *Lewis-Williamson*. There, an insurance agent employed by an insurance company had a casual conversation with the insured and thereafter gave the insured a rough estimate of the value of the insured's property. The insured purchased an insurance policy from the agent's company based on the agent's valuation of the insured's property. A fire subsequently destroyed the insured's property. The insured alleged that the amount of the policy was insufficient to cover her losses and that the insurance agent was liable to her for economic damages because he was her agent or had some other special relationship with her. We concluded that

> "[a]lthough [the] plaintiff trusted [the insurance agent] to take care of her insurance needs, there is no evidence that she had reason to expect, other than through her trusting nature, that he would work on her economic behalf. * * * He may have been available to her for her convenience * * * but that was for the economic benefit [of the insurance company

that employed him] and himself and not plaintiff. The fact that she trusted him and deferred to his judgment does not make him her agent or show that he was acting on her behalf."

179 Or App at 497.

Similarly, the record in this case, viewed in the light most favorable to plaintiffs, does not show that there is an issue of fact about whether Gold, plaintiffs, or Farmers understood that Gold would owe primary responsibility to plaintiffs rather than Farmers. The record also does not show that plaintiffs had any reason to believe that Gold had agreed to exercise independent judgment on their behalf and subject to their control or that plaintiffs had asked him to do so. Rather, the record shows that Gold told plaintiffs that he would provide certain services to them because plaintiffs were purchasing Farmers insurance from him. The Farmers brochure that Gold gave plaintiffs also indicates that plaintiffs would receive better service on any insurance policy that they purchased from Farmers than they would receive on a policy purchased from a company that sold insurance by direct mail or used " '800' phone numbers to gain business." That material describes Gold as a Farmers personal agent and says that the reason insureds who purchase insurance from Farmers receive superior service is that Farmers employs agents like Gold. Although Gold described himself as plaintiffs' agent, the record indicates that he did not agree to select and purchase insurance on plaintiffs' behalf and subject to their control, or that plaintiffs asked him to do that. Rather, the record indicates that plaintiffs selected their own insurance policy and purchased it from Gold.

Of all the agents employed by Farmers, Gold was plaintiffs' Farmers agent, but the summary judgment record does not establish that there is an issue of fact about whether Gold had an agency relationship with plaintiffs. In light of that conclusion, we need not consider plaintiffs' remaining arguments.

Affirmed.