Argued and submitted June 27, reversed December 14, 2005, petition for review
denied February 21, 2006 (340 Or 158)

INDIAN CREEK DEVELOPMENT COMPANY,
an Oregon partnership,
*Respondent,*

*v.*

CITY OF HOOD RIVER,
an Oregon municipal corporation,
*Appellant.*

010006 CC; A123521

125 P3d 50

Robert E. Franz, Jr., argued the cause for appellant. With him on the briefs was Law Office of Robert E. Franz, Jr.

John W. Shonkwiler argued the cause for respondent. With him on the brief was John W. Shonkwiler, P. C.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Armstrong, Judge.

ARMSTRONG, J.

---

* Brewer, C. J., *vice* Richardson, S. J.

## ARMSTRONG, J.

This case arises out of plaintiff's efforts to sell real property in the City of Hood River. Plaintiff brought multiple claims against the city, including a takings claim, an equal protection claim, an intentional interference with prospective business relations claim, and a negligence claim. The jury returned a verdict for defendant on every claim except for the negligence claim, on which it awarded plaintiff $385,000 on the theory that defendant's negligence caused plaintiff to be unable to sell its property. Defendant appeals, and we reverse.

■       Defendant raises multiple assignments of error. Because we conclude that the trial court erred in denying defendant's motion for a directed verdict, we write solely to address that assignment. "Upon review of a denial of a motion for a directed verdict, we will not set aside a jury verdict 'unless we can affirmatively say that there is no evidence from which the jury could have found the facts necessary to establish the elements of [the] plaintiff's cause of action.'" *Conway v. Pacific University*, 324 Or 231, 235, 924 P2d 818 (1996) (quoting *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984); bracketed material in *Conway*).

In 1998, defendant approved the subdivision of plaintiff's property into six lots. Condition Z of the approval provided:

> "While not a condition of approval of this subdivision, the traffic light and widening of Twelfth Street at Pacific Avenue must be completed or bonded for completion as part of any subsequent development on any of the proposed lots within this subdivision."

The intersection at Twelfth Street and Pacific Avenue in Hood River had been operating at a deficient level of service since at least 1996. Neither defendant nor the Oregon Department of Transportation (ODOT) had the funds to improve the intersection, so defendant was looking for alternative funding methods.

Defendant encouraged plaintiff to explore the formation of a Local Improvement District (LID) to fund

the intersection improvements, but defendant ultimately declined to proceed with plaintiff's proposed district. Plaintiff learned of defendant's decision in July 1998 in a letter from defendant's then-counsel, which stated:

> "It has always been [defendant's] legal position that it could not impose a condition of approval on your subdivision requiring installation of a traffic light. Consequently, any reference in the Findings of Fact for your subdivision are cautionary only because of the existing situation at Twelfth and Pacific. There is no existing condition of approval requiring anyone to install a traffic light.

> "[Defendant] has reviewed the materials you provided regarding the proposed LID and has determined that it would not be possible to proceed with the LID at this time for a number of reasons. As you also know, this particular traffic light is on ODOT's project list, but installation is not expected for several years.

> "You should not consider [defendant's] decision not to pursue the LID as a roadblock to keep you from proceeding with your development plans. It is, however, in your best interests to proceed sooner rather than later because at some point, the traffic situation will preclude further development approval until the street light is in."

Defendant approved the final plat for plaintiff's subdivision in May 1999. Shortly prior to that, in April 1999, defendant adopted Ordinance 1770. Now codified at Hood River Municipal Code Chapter 3.20,[1] that ordinance authorized defendant to make a finding that adequate public facilities exist with respect to development proposals if the applicant pays a proportional share of any necessary improvements to the public facilities affected by the proposal.

■ Plaintiff's managing partner testified that she was negotiating with several potential buyers of the properties and that those buyers "disappeared" after they met with city planners to discuss developing the lots. Plaintiff argued to the jury that those potential buyers were told by the city that, in order to develop lots in plaintiff's subdivision, the buyer

---

[1] The text of Hood River Municipal Code Chapter 3.20 is appended to this opinion.

would have to pay for the entire cost of improving the intersection at Twelfth and Pacific.

Defendant assigns error to the trial court's denial of its motion for a directed verdict on the negligence claim, arguing that plaintiff failed to establish a special relationship between it and defendant, which is required where a plaintiff seeks only economic damages for negligence. Plaintiff argues that, by virtue of the land use planning process, certain documents, and Hood River Municipal Code Chapter 3.20, it has such a relationship with defendant.

■     The rule in Oregon is that, "[i]n negligence actions seeking to recover for only economic harm, a plaintiff must establish a duty independent of the general obligation to prevent foreseeable harm." *SFG Income Fund, LP v. May*, 189 Or App 269, 274, 75 P3d 470 (2003) (citing *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987)); *see also Miller v. Mill Creek Homes, Inc.*, 195 Or App 310, 315, 97 P3d 687 (2004). One way

> "to characterize the types of relationships in which a heightened duty of care exists is that the party who owes the duty has a *special responsibility* toward the other party. This is so because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution.
>
> "This special responsibility exists in situations in which one party has hired the other in a professional capacity, as well as in principal-agent and other similar relationships. It also exists in the type of situation described in *Georgetown Realty* [*v. The Home Ins. Co.*, 313 Or 97, 831 P2d 7 (1992)], in which one party has relinquished control over the subject matter of the relationship to the other party and has placed its potential monetary liability in the other's hands. In all those relationships, one party has authorized the other to exercise independent judgment in his or her behalf and, consequently, the party who owes the duty has a special responsibility to administer, oversee, or

otherwise take care of certain affairs belonging to the other party."

*Conway*, 324 Or at 240-41 (emphasis in original). The legal question before us is "whether there is a special duty created by status, relationship, or statute." *SFG Income Fund, LP*, 189 Or App at 278.

Plaintiff argues that defendant had a heightened duty to plaintiff, and a special relationship with it, based on Condition Z to the subdivision approval, the July 1998 letter to plaintiff from defendant's then-counsel, and Hood River Municipal Code Chapter 3.20. We examine each document in turn to determine whether it establishes that defendant was, "at least in part, acting to further the economic interests of" plaintiff. *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 161, 843 P2d 890 (1992).

Condition Z to the subdivision approval does not create a special relationship between plaintiff and defendant that would give rise to a heightened duty on defendant's part. Condition Z to the subdivision approval provided:

"While not a condition of approval of this subdivision, the traffic light and widening of Twelfth Street at Pacific Avenue must be completed or bonded for completion as part of any subsequent development on any of the proposed lots within this subdivision."

That condition merely made clear that plaintiff need not improve the intersection in order to subdivide its property, but that that improvement would be required as part of any subsequent development. Nothing in the language of Condition Z can be interpreted to establish that defendant would act in the economic interests of plaintiff when reviewing applications for subsequent development of the subdivided property. In fact, Condition Z made clear that subsequent development would be conditioned on the intersection improvements. Thus, plaintiff cannot rely upon Condition Z, or any other provision of the subdivision approval, to establish that it has a special relationship with defendant.

Nor can plaintiff rely on the July 1998 letter that it received from defendant's then-counsel to create a special relationship and a resulting duty. As with Condition Z of the

subdivision approval, there is nothing in the text of that letter, quoted above, that establishes that defendant agreed to act to further plaintiff's economic interests with relation to the subdivided property. Absent such language, the letter cannot, as a matter of law, establish a special relationship between plaintiff and defendant that would give rise to a heightened duty on defendant's part.

With regard to Hood River Municipal Code Chapter 3.20, we must determine whether defendant, "in adopting the ordinance[,] intended to provide a tort remedy to a class of persons who are harmed by the receipt of incorrect land use information." *SFG Income Fund, LP,* 189 Or App at 277. Hood River Municipal Code Chapter 3.20 authorizes defendant to make a finding of "adequate public facilities" with regard to a land use application, where it otherwise would not be able to do so, if the applicant pays a proportional share of the cost of improving the deficient public utilities. The intended beneficiaries of the ordinance are land use applicants. Plaintiff never submitted a land use application to develop the properties in its subdivision, nor did plaintiff introduce evidence that any of its lost prospective buyers had, in fact, submitted an application. Furthermore, even assuming that plaintiff, notwithstanding the fact that it is not a land use applicant, were within the class of persons for whose benefit the ordinance was enacted, here, as in *SFG Income Fund, LP,* there is "no suggestion in the language of the ordinance that the [city] intended tort liability to exist even if the duty to" require only a proportional share of improvement costs had been breached. 189 Or App at 277-78. Consequently, Hood River Municipal Code Chapter 3.20 does not establish a special relationship between plaintiff and defendant or give rise to a tort duty.

Finally, plaintiff argues that defendant owed it a duty of care arising from its "ongoing land-use application review and processes." Plaintiff, in essence, argues that defendant is a "nongratuitous supplier[ ] of information" with a "duty to [its] clients or employers or to intended third-party beneficiaries of [its] contractual, professional, or employment relationship to exercise reasonable care to avoid misrepresenting facts." *Onita,* 315 Or at 165. However, that argument fails under *SFG Income Fund, LP.* In that case, the plaintiff

argued that the defendant county had a duty to provide accurate zoning information to those who might inquire about the status of particular properties. The court concluded that the defendant had no such duty because there was no evidence that the county planner who provided information to the plaintiffs was "exercising independent judgment on [the plaintiffs'] behalf or furthering their economic interests." *SFG Income Fund, LP*, 189 Or App at 281. In a nutshell, "[n]o professional, formal or financial relationship existed between the[ ] parties." *Id.* The same is true in this case. The allegedly negligent conduct occurred when potential buyers of plaintiff's property approached defendant with questions about potential development. Plaintiff produced no evidence that defendant or its planners undertook to serve plaintiff's economic interests when approached by plaintiff's prospective buyers. On these facts, we hold that plaintiff failed to establish that a special relationship existed between it and defendant.

Plaintiff nonetheless argues that several cases require the conclusion that defendant did owe plaintiff a duty of care, the breach of which would allow it to recover solely economic damages. Plaintiff's reliance on those cases is misplaced.

First, plaintiff cites *Brennen v. City of Eugene*, 285 Or 401, 591 P2d 719 (1979). In *Brennen*, the plaintiff was injured in an accident involving a taxi cab. A city ordinance required taxi operators to maintain liability coverage of at least $100,000; the taxi operator involved in the plaintiff's accident only had $10,000 in liability coverage. The plaintiff sued the City of Eugene, alleging that the city's negligence in issuing a taxi license to a taxi operator with inadequate insurance had resulted in the plaintiff's inability to collect on his judgment against the taxi operator. The Supreme Court held that the trial court erred in dismissing the plaintiff's complaint because, based on the city ordinance establishing the liability insurance minimums, the municipal employee who issued the taxicab license had a duty to exercise reasonable care to avoid creating a foreseeable risk of harm to others. *Id.* at 411.

Our conclusion in this case is, in fact, consistent with *Brennen*. Whereas the plaintiff in *Brennen* could identify a particular municipal code provision that imposed a specific duty on the defendant to avoid creating a risk of foreseeable harm to the particular plaintiff in the case, the Hood River ordinance on which plaintiff relies does not establish such a duty.

The same distinction dooms plaintiff's reliance on *Urban Renewal Agency v. Lackey*, 275 Or 35, 549 P2d 657 (1976), *J. Gregcin, Inc. v. City of Dayton*, 39 Or App 743, 593 P2d 1231, *rem'd*, 287 Or 709 (1979), and *Dykeman v. State*, 39 Or App 629, 593 P2d 1183 (1979). In each of those cases, a duly enacted rule of law created a duty on the part of defendant to avoid harming the particular plaintiff. *See Urban Renewal Agency*, 275 Or at 37-39 (holding that plaintiff's allegations that defendant had breached a duty to it by failing to comply with federal regulations requiring defendant to assist displaced tenants of condemned properties stated a tort claim); *J. Gregcin, Inc.*, 39 Or App at 747 (holding that state statute establishing conditions on the exercise of city's authority over subdivisions established a duty between the city and a subdivision applicant); *Dykeman*, 39 Or App at 633-34 (holding that building inspector owed building permit applicant a duty of care based on existence of state building code and the fact that plaintiff had filed an application for a building permit). Here, plaintiff has not identified a similar duty-creating statute.

Finally, plaintiff's reliance on *Dizick v. Umpqua Community College*, 287 Or 303, 599 P2d 444 (1979), is misplaced because the tort at issue in that case was fraudulent misrepresentation, an intentional tort. Because this case involves only negligence, *Dizick* is inapposite.

In sum, we conclude that the evidence in this record cannot, as a matter of law, support a conclusion that defendant had a special relationship with plaintiff or owed it a duty to avoid causing it economic loss. The trial court erred in failing to grant defendant's motion for directed verdict.

Reversed.

# APPENDIX

## Chapter 3.20 of the Hood River Municipal Code

"3.20.010   General.

"A.   Upon review of any land use application to which Goal 11 applies, affirmative findings may be made that adequate public facilities exist with respect to a public facility if, in addition to the requirements of the [Hood River Municipal Code], the hearing body can make the affirmative findings required in Section 2 below, and the public facility with respect to which the Section 2 findings are made is a qualified public facility pursuant to Section 3 below.

"B.   As used in this Chapter, the terms 'development proposal' and 'proposed development' refer to any land use application to which Goal 11 applies, except zone changes and comprehensive plan amendments.

"C.   Notwithstanding anything to the contrary in this Chapter, the applicant shall have the burden of proving the adequacy of public facilities.

"3.20.020   Findings Required. In order to find, under this Chapter, that adequate public facilities exist with respect to a public facility, or that the level of service on a street or at an intersection is acceptable, the following findings must first be made:

"A.   The public facility is currently, or as a result of the proposed development will become, an inadequate public facility and/or does not or will not operate at an acceptable level of service. This finding must point to the specific evidence in the record that supports this finding.

"B.   The proposed development will impact the public facility and to what extent the proposed development will impact the public facility. The finding addressing the extent of the impact shall point to specific evidence in the record in support of the finding.

"C.   A description of the improvements necessary to make the facility an adequate public facility and/or make it operate at an acceptable level of service ('Necessary Improvements') and the estimated costs of the Necessary Improvements ('Improvement Costs').

"D.  Why a condition of approval requiring the applicant to contribute to the improvement of the public facility is reasonably related to the impacts of the proposed development on the public facility.

"E.  The impact of the proposed development is or is not roughly proportional to the Necessary Improvements and Improvement Costs.

"F.  If the impact of the proposed development is not roughly proportional to the Necessary Improvements and Improvement Costs, the impact of the proposed development is roughly proportional to a specified dollar amount of, or proportion in terms of percentages of the Improvement Costs for the public facility ('Proportionate Contribution'). This finding shall explain with reasonable particularity the determination of rough proportionality.

"3.20.030  Qualified Public Facility. A qualified public facility is a public facility that is subject to public facilities planning under the Comprehensive Plan; part of an existing public facilities plan; and for which the City has a designated improvement fund, which fund may or may not be currently funded.

"3.20.040  Impact Study. The applicant shall provide adequate, reliable and quantifiable information as to the extent the proposed development will impact the public facility. If the information is not available to determine the impact proposed development will have on a public facility, the applicant shall provide, at the applicant's cost, an impact study prepared by a registered professional engineer licensed in the State of Oregon with respect to the proposed development and facility being studied.

"3.20.050  Alternative Findings Allowed. This Chapter does not preclude the hearing body from otherwise finding that adequate public facilities exist or cannot exist (even if the findings under Section .020 can be made) with respect to a public facility or that a street or intersection is operating at an acceptable level of service or cannot so operate for other reasons supported by the record. In other words, if other reasons and evidence in the record support a finding of the existence of adequate public facilities, the applicant shall not be required to make a Proportionate Contribution payment.

"3.20.060 Conditions and Limits. If the hearing body makes affirmative findings pursuant to Section .020 above and the development proposal is approved, approval shall be conditioned on the following:

"A. The applicant's written agreement to pay the Proportionate Contribution specified in Section .020(F) above. The agreement shall provide that full payment, partial payment or the posting of acceptable security must be made to the City on or before the commencement of any work on and issuance of any permit for the subject property under the development proposal. The condition shall also provide that if payment is not made as provided in this Chapter, the City Council shall assess the Proportionate Contribution against the subject property by resolution and shall enter the assessment resolution in the docket of city liens and record the same in the Hood River County Assessor's real property records.

"B. The determination under this Chapter of the applicant's Proportionate Contribution to the Necessary Improvements of the public facility shall be final and neither the applicant, nor the applicant's successors and assigns, shall be entitled to a refund or credit in the event the total actual costs to the City of the Necessary Improvements are less than the Improvement Costs. Similarly, the City shall not be entitled to seek additional contribution from an applicant or the applicant's successors and assigns if the total actual costs to the City of the Necessary Improvements exceeds the Improvement Costs.

"3.20.070 Project Determination. An owner or owners of real property that is served by a public facility and who anticipate(s) that development may occur in phases, may apply to the City for a determination under this Chapter ('Project Determination'). The application form shall be provided by the City and the request shall be heard by the Planning Commission in accordance with the procedures under [Hood River Municipal Code] Chapter 17.09. The application shall describe the subject properties with respect to which the Project Determination is sought. The provisions of this section shall be in addition to the other applicable provisions of this Chapter.

"A. The findings required by this Chapter shall also include the following:

"(1). Legal description(s) of the additional property(ies) to be covered by the findings in Section .020 above.

"(2). The findings in Section .020 above shall be based on the level and intensity of development that could occur on the subject property under the applicable zoning if the applicant does not have a development proposal, or on a proposed level and intensity of development under the applicable zoning to which the applicant agrees to commit. The level and intensity of allowable development shall be described with reasonable particularity.

"B. Approval shall be conditioned upon development occurring at or below the level and intensity considered under the applicable zoning at the time the findings are made.

"C. The applicant, and the applicant's successors and assigns, shall be responsible for making the payment pursuant to Section .060(A) above and no work shall occur on or any permit (including any subsequent development permit) be issued for any of the subject properties prior to receipt by the City of the payment. All of the subject parcels shall be subject to the lien described in Section .060(A).

"D. A Project Determination under this Section .070 shall constitute compliance with Goal 11 with respect to adequacy of public facilities and findings of adequate public facilities and/or acceptable level of service (with respect to a street or intersection) for all subsequent development proposals on the subject properties submitted in accordance with the condition in Section .070(B) above.

"3.20.080 Final Determination. Subject to any right to appeal the City's decision under [Hood River Municipal Code] and state and federal law, the determination under this Chapter of the applicant's Proportionate Contribution to the Necessary Improvements of the public facility shall be final and neither the applicant, nor the applicant's successors and assigns, shall be entitled to a refund or credit in the event the total actual costs to the City of the Necessary Improvements are less than the Improvement Costs. Similarly, the City shall not be entitled to seek additional contribution from an applicant or the applicant's successors and assigns if the total actual costs to the City of the Necessary Improvements exceeds the Improvement Costs. This section does not preclude reimbursement of amounts paid in excess of the Proportionate Contribution pursuant to an

agreement between the City and applicant, or as may otherwise be required by ordinance, statute, or other law.

"3.20.090    Application of Funds. Proportionate Contribution funds received by the City shall be deposited in a designated fund and applied by the City to the construction and installation of the Necessary Improvements, unless the Proportionate Contribution is also a Reimbursement Charge as defined in Chapter 13.17, in which case the provisions of Chapter 13.17 regarding disposition of the funds shall apply. Any unused Proportionate Contribution funds remaining upon completion and the City's acceptance of the Necessary Improvements shall remain in the designated City fund and may be used by the City only for improvements to public facilities in accordance with the designated fund.

"3.20.100    Time Limits. Findings made pursuant to this Chapter shall be valid for as long as the underlying permit for the development proposal is valid, including any extensions thereof. A Project Determination shall be valid for a period of eighteen (18) months, but may be extended by the Planning Director upon application made to the Planning Director at least 30 days prior to expiration. The Project Determination may be extended for additional periods of up to one year each if there has been no substantial change in circumstances."