Argued and submitted August 29, 2019, affirmed December 29, 2021, petition for review denied May 5, 2022 (369 Or 705)

DIAMOND HEATING, INC.,
*Plaintiff-Appellant,*

*v.*

CLACKAMAS COUNTY
and Dawn Penberthy,
*Defendants-Respondents.*

Clackamas County Circuit Court
17CV16465; A166975

505 P3d 4

Plaintiff appeals the dismissal of its negligence claim against defendants. Plaintiff's claim was based on allegations that defendants negligently supervised a probationer, who had embezzled money from plaintiff while on probation for previous embezzlement convictions. Plaintiff argued that special conditions of probation that were placed on the probationer created a duty of care that defendants owed to plaintiff, such that the economic loss doctrine did not bar plaintiff's claim. *Held*: Plaintiff did not allege facts in the complaint that established a basis for imposing an additional duty on defendants from a source other than the common-law duty of reasonable care. The trial court did not err in dismissing plaintiff's negligence claim based on the economic loss doctrine.

Affirmed.

Roderick A. Boutin, Judge pro tempore.

Kathryn H. Clarke argued the cause and filed the reply brief for appellant. Also on the opening brief was Jess M. Glaeser. On the supplemental brief was Kathryn H. Clarke.

Scott C. Ciecko argued the cause for respondents. Also on the brief was Stephen L. Madkour. On the supplemental brief was Scott C. Ciecko.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

ORTEGA, P. J.

Affirmed.

James, J., dissenting.

**ORTEGA, P. J.**

Plaintiff Diamond Heating, Inc., appeals the dismissal of its negligence claim against defendants. Its complaint alleges that, more than three years after hiring Deana Freauff as a financial manager and bookkeeper in Seaside, plaintiff discovered that Freauff had embezzled significant sums of money during her employment. In the resulting criminal prosecution of Freauff, plaintiff learned that, when she was hired, Freauff was serving a sentence of probation imposed by the Multnomah County Circuit Court and was under the supervision of the Clackamas County Community Corrections Department for previous convictions of embezzlement. Plaintiff's resulting negligence action against Clackamas County and a probation officer employed in its Community Corrections Department alleges that defendants failed to take reasonable steps to monitor and enforce Freauff's compliance with court-ordered special conditions of probation.

Defendants moved to dismiss under ORCP 21 A(8), arguing that, on the alleged facts, the "economic loss rule" barred plaintiff's negligence claim, and the trial court agreed and granted the motion. Plaintiff appeals, arguing, as it did in the trial court, that the special conditions of probation imposed by the Multnomah County Circuit Court, which prohibited Freauff from undertaking employment duties like those she assumed for plaintiff without written permission from her probation officer, and which required Freauff to make "full disclosure" to the employer, created duties for defendants that allow plaintiff to recover its economic losses. Like the trial court, we conclude that the probation conditions that governed Freauff's conduct did not impose duties on defendants that avoid the economic loss rule. Accordingly, we affirm the judgment of dismissal.

We review the trial court's ruling dismissing the claim for legal error, assuming the truth of all well-pleaded facts alleged in the complaint. *Doe v. Lake Oswego School District*, 353 Or 321, 323, 297 P3d 1287 (2013). As noted, plaintiff's amended complaint alleges that, more than three years after plaintiff hired Freauff as its financial manager and bookkeeper, it learned that she had embezzled more

than $200,000 from plaintiff's business. During the criminal investigation of Freauff, plaintiff learned that she had previously pled guilty to multiple counts of embezzlement from one former employer and had been convicted of embezzlement from another former employer. After those convictions, the Multnomah County Circuit Court sentenced Freauff and allegedly imposed special probation conditions requiring Freauff to "advise * * * any future employer * * * of this probation and nature of the crime" and to provide her probation officer with employment information for purposes of monitoring her compliance with the probation conditions.[1] The conditions allegedly also provided that Freauff was "prohibited from taking any employment involving the handling of money or negotiable instruments without the written permission of the probation officer and after making full disclosure" to the employer. Defendants were responsible for supervision of Freauff's probation.

Plaintiff further alleged that "[t]he primary purpose of each of these special conditions of probation were [*sic*] for the protection of the financial interests of any employer or potential employer" from Freauff and that, once plaintiff became Freauff's employer, "the purposes of the special conditions of the probation were to protect plaintiff's financial interests." Plaintiff alleged that defendants were negligent in performing their duties of supervising Freauff's employment and sought over $200,000 for "direct cash loss" as a result of Freauff's theft, plus more than $23,000 for accounting and legal fees, and significant additional damages totaling $750,000.

The parties agree that the central question on appeal is whether plaintiff's negligence claim is barred by the economic loss doctrine, a common-law doctrine created in response to pragmatic concerns over unbounded liability. *See JH Kelly, LLC v. Quality Plus Services, Inc.*, 305 Or App 565, 572, 472 P3d 280 (2020) (citation omitted). In general, Oregon law imposes liability for negligence if one's conduct

---

[1] Plaintiff also alleged that it learned that Freauff had forged the signature of the president of plaintiff on a letter that "falsely advis[ed] [Freauff's probation officer] that plaintiff knew of her criminal record and that she was currently on probation[.]"

unreasonably creates a foreseeable risk of harm to others. *Id.* (citing *Slogowski v. Lyness*, 324 Or 436, 441, 927 P2d 587 (1996)). However, where purely economic loss is alleged, the plaintiff must also allege facts sufficient to establish that the defendants owed a duty of care to the plaintiff beyond the common-law duty of reasonable care. *Paul v. Providence Health System-Oregon*, 351 Or 587, 591, 273 P3d 106 (2012) ("To recover damages for purely economic harm, liability 'must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm.'" (Quoting *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 341, 83 P3d 322 (2004), and *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992).)).

Plaintiff urges that the necessary additional duty arose from the special conditions of probation imposed on Freauff. It argues that the prohibition on Freauff taking employment involving the handling of money without written permission from the probation officer, and the requirement that she provide her probation officer with employment information to monitor her compliance, gave rise to a duty owed by defendants to any of Freauff's future employers to monitor her compliance with those conditions, and argues that that duty was specifically owed to plaintiff.

The first problem with plaintiff's argument is that the probation conditions impose duties only on Freauff and make no reference to duties imposed on the person supervising Freauff. Further, plaintiff does not plead (and apparently cannot establish) that defendants were parties to the court order imposing conditions of probation on Freauff, who was not sentenced either in Clackamas County or in the county where plaintiff is located. Unlike the situation in *McEvoy v. Helikson*, 277 Or 781, 785, 562 P2d 540 (1977), on which plaintiff relies, there is no court order directing defendants to act for the benefit of plaintiff. *Compare id.* (concluding that a court order directing an attorney to refrain from certain action gave rise to a duty that supported the imposition of damages for emotional distress suffered by an intended beneficiary of that order).

In addition, plaintiff's allegations in the amended complaint that the probation conditions had the *purpose* of protecting plaintiff are not allegations of fact that we must accept as true. As with any written instrument, an interpretation of the meaning of the probation conditions is an issue of law for us to determine based on the document's text, and plaintiff cannot, through artful pleading, turn that into an issue of fact. *See State v. Langford*, 260 Or App 61, 68, 317 P3d 905 (2013) (an appeal from punitive contempt, where the central dispute was what a court order required, raised an issue of law); *see also Gafur v. Legacy Good Samaritan Hospital*, 344 Or 525, 529, 185 P3d 446 (2008) ("[W]e disregard any allegations that state conclusions of law."). Plaintiff's bare allegation about the purpose of the probation conditions does not provide a factual basis for imposition of a duty that would avoid operation of the economic loss rule. Plaintiff has not alleged facts that would impose a duty on defendants beyond the common-law duty to exercise reasonable care to prevent foreseeable harm.

Plaintiff's reliance on *Brennan v. City of Eugene*, 285 Or 401, 591 P2d 719 (1979), is misplaced. In that case, the Supreme Court held that an ordinance imposed on a municipality a duty to exercise reasonable care regarding the licensing of taxicabs, so as to avoid creating a foreseeable risk of harm to others. *Id.* at 411. The duty alleged to have been breached in *Brennan* arose from a specific obligation stated in the ordinance, in contrast to the generalized duty of a probation officer to stay informed about a probationer's activities, as alleged by plaintiff here. In all events, the plaintiff in *Brennan* had suffered physical injury, and the opinion does not address applicability of the economic loss rule.

The dissent raises ORS 137.630 as the source of a duty in addition to the common-law duty. But we may not simply declare that a statutory duty exists without undertaking the necessary steps of statutory construction. Additionally, plaintiff has not cited that statute in the complaint or in the briefs as the source of a duty or offered any statutory analysis, and we will not undertake that advocacy on plaintiff's behalf.

As we recently said in *JH Kelly, LLC*, 305 Or App at 575,

> "the economic loss rule emerged as a bar on a plaintiff's recovery for 'purely economic loss' caused by a third person, absent the plaintiff establishing the presence of a fact or circumstance that conceptually removed the case from the realm of the concerns for unbounded litigation that gave rise to the rule—that is, the plaintiff must establish a limiter. *Hale v. Groce,* 304 Or 281, 284, 744 P2d 1289 (1987)."

The dissent believes that the pleaded facts—alleging damages based on theft—provide such a "limiter." We conclude that conditions of probation imposing duties on a person while under supervision are not a sufficient "limiter" to allow imposition of liability on a supervising agency for purely economic loss. If that were true, then, there would be no bar to claims against a supervising agency for every economic loss caused by a person under supervision. A rule creating such potentially broad liability would increase the burdens of supervision beyond the ability to sustain it and create the type of unbounded litigation and liability that the economic loss rule is designed to prevent. *See JH Kelly, LLC*, 305 Or App at 572.

The pleadings in this case do not allege a basis for imposing an additional duty on defendants from a source other than the common-law duty of reasonable care that would support liability for plaintiff's economic losses.[2]

Affirmed.

**JAMES, J.,** dissenting.

Plaintiff hired Deana Freauff as a financial manager and bookkeeper, then later discovered that Freauff had embezzled significant sums of money throughout the course of her employment. Embezzlement is a specific form of theft—a property crime. In tort, it is known as conversion.

---

[2] The dissent spends significant time explaining that the economic loss doctrine does not apply in this case because plaintiff's loss was not merely "economic." The parties, however, never raised or briefed such a theory, and we therefore do not address it.

In the resulting criminal prosecution of Freauff, plaintiff learned that, at the time of her hiring, Freauff had been convicted of the same type of theft from not one, but two, previous employers. Also, plaintiff learned that Freauff was on probation, and subject to specific conditions of probation concerning her employment, to be enforced and monitored by the Clackamas County Community Corrections Department. Accordingly, plaintiff sued for negligent supervision, seeking direct losses of $214,235.98—the amount of property (currency) stolen by Freauff—as well as consequential damages of $325,000.00 for the business, and "personal loans from Dan Nelson and his wife, totaling $97,200.00" needed to keep the business afloat as a result of the theft.

In response, defendants moved to dismiss under ORCP 21 A(8), making the singular argument before us on appeal—that plaintiff failed to state a claim under the "economic loss rule." In *JH Kelly, LLC v. Quality Plus Services, Inc.*, 305 Or App 565, 572, 472 P3d 280 (2020), we discussed that the economic loss rule was "created by courts in response to pragmatic concerns over unbounded liability." We emphasized that "the application of the rule cannot be divorced from the pragmatic concerns that birthed it." *Id.* at 575. As such, in determining whether the economic loss rule precludes the assertion of a claim, a court looks for "the presence of a fact or circumstance that conceptually remove[s] the case from the realm of the concerns for unbounded litigation that gave rise to the rule—that is, the plaintiff must establish a limiter." *Id.* at 573-74. The pragmatic concerns over unbounded liability are not present in this case. There certainly may be hurdles to this litigation on summary judgment, but they are not grounded in the economic loss rule. I respectfully dissent.

In general, in Oregon, all persons are liable in negligence if their conduct unreasonably creates a foreseeable risk of harm to others. *Slogowski v. Lyness*, 324 Or 436, 441, 927 P2d 587 (1996). Ordinarily, it is not the establishment of a duty that limits the potential reach of negligence litigation. Establishing a duty is not typically an element of a negligence claim in Oregon law. Rather, negligence in Oregon extends to the limits of the general principles of

foreseeability articulated in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987), where the court stated:

> "[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

However, there are certain instances where something more than general foreseeability must be established. In *Ore-Ida Foods v. Indian Head*, 290 Or 909, 627 P2d 469 (1980), the court considered an action by an employer against a third-party tortfeasor for economic losses arising out of the death of an employee. The court held that "[t]he prevailing rule in the United States and England is that a plaintiff may not recover for economic loss resulting from negligent infliction of bodily harm to a third person." *Id.* at 916. As justification for the rule, the court discussed that permitting such damages has the potential of leading to "limitless recoveries and *** ruinous consequences." *Id.* at 916-17. Later, in *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 158, 843 P2d 890 (1992), the court quoted with approval the rationale articulated by Judge Cardozo in *Ultramares v. Touche*, 255 NY 170, 179-80, 174 NE 441 (1931):

> "'If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a *liability in an indeterminate amount for an indeterminate time to an indeterminate class*. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.'"

(Emphasis added.)

This rule—known as the "economic loss" rule—states that, generally, a person "is not liable for negligently causing a stranger's purely economic loss without injuring his person or property." *Hale v. Groce*, 304 Or 281, 284, 744

P2d 1289 (1987) (citing *Ore-Ida Foods*, 290 Or 909). Purely economic losses are "financial losses to intangibles." *Harris v. Suniga*, 209 Or App 410, 418, 149 P3d 224 (2006), *aff'd*, 344 Or 301, 180 P3d 12 (2008). Such harm typically comes in the form of lost profits, lost insurance proceeds, lost market share, etc. *See, e.g.*, *Indian Creek Development Co. v. City of Hood River*, 203 Or App 231, 125 P3d 50 (2005), *rev den*, 340 Or 158 (2006) (lost profits); *Miller v. Mill Creek Homes, Inc.*, 195 Or App 310, 97 P3d 687 (2004) (loss of flood insurance proceeds); *SFG Income Fund, LP v. May*, 189 Or App 269, 75 P3d 470 (2003) (loss of expected proceeds resulting from negligent misinformation that property was buildable); *Lewis-Williamson v. Grange Mutual Ins. Co.*, 179 Or App 491, 39 P3d 947 (2002) (undervaluation of the plaintiff's residence in a homeowners insurance policy); *Portland Trailer & Equipment v. A-1 Freeman Moving*, 166 Or App 651, 5 P3d 604, *adh'd to as modified on recons*, 168 Or App 654, 4 P3d 741 (2000) (attorney fees incurred as a result of the defendants' initiation of the predicate civil proceeding); *Roberts v. Fearey*, 162 Or App 546, 986 P2d 690 (1999) (failed loan transactions); *Oregon Life and Health v. Inter-Regional Financial*, 156 Or App 485, 967 P2d 880 (1998) (loss of investment); *Allstate Ins. Co. v. Tenant Screening Services, Inc.*, 140 Or App 41, 914 P2d 16 (1996) (money paid in settlement of personal injury claim).

When seeking recovery for purely economic losses, it is incumbent on the plaintiff, to establish "the presence of a fact or circumstance that conceptually removed the case from the realm of the concerns for unbounded litigation." *JH Kelly, LLC*, 305 Or App at 573-74. Damage to a person or property, however, provides "an obvious boundary to concerns of unbounded liability." *Id.* at 574. "Accordingly, the doctrine is inapplicable when the damage is one to person or property." *Id.*

And that is the first, and most obvious, reason why the economic loss rule is inapplicable in this case: this case involves the clear and obvious limiter of theft of property.[1]

---

[1] The majority is correct that, on appeal, the parties have largely assumed that this case involved purely economic losses and focused their argument on whether there was a source of duty outside the common law. But unlike the majority, I do not so easily dispose of this essential element of the analysis. The

As the Supreme Court noted in *Harris*, economic losses are often intertwined with property damage.

> "Every physical injury to property can be characterized as a species of 'economic loss' for the property owner, because every injury diminishes the financial value of the property owner's assets. Damage to a car reduces the value of the car—one of the owner's assets. A tree falling on a person's residence is damage to property, but also can be characterized as a financial loss because it reduces the value of the residence, which the owner may properly view as an asset or financial investment as well as a residence. Yet the law ordinarily allows the owner of the damaged car or residence to recover in negligence from the person who caused the damage."

*Harris*, 344 Or at 310. Similarly, we recently noted that, "when negligence results in personal injury or property damage, the loss is not 'purely economic' *** even though the plaintiff may seek compensation for resulting economic losses, such as medical expenses or repair costs." *Lansing v. John Does 1-5*, 300 Or App 803, 808, 455 P3d 541 (2019).

Here, Freauff's conduct involved embezzlement. In terms of criminal law, such conduct falls under the definition of theft, a property crime. In terms of tort, such conduct traditionally is described as conversion. Conversion is the "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mustola v. Toddy*, 253 Or 658, 663, 456 P2d 1004 (1969) (adopting the definition of conversion found in *Restatement (Second) of Torts* § 222A(1) (1965)). "A chattel is '[m]ovable or transferable property; personal property; esp. a physical object capable of manual delivery and not the subject matter of real property.'" *Black's Law Dictionary* 268 (9th ed 2009). For the purposes of the tort of conversion, therefore, physical money is chattel, and therefore property. *Cron v. Zimmer*, 255 Or App 114, 129, 296 P3d 567 (2013).

---

issue on appeal is the applicability of the economic loss rule. The parties have identified that issue and cited all relevant authority.

If Freauff had set fire to her employer's building, and inside that building was a safe with money, this case would not be barred by the economic loss rule. Similarly, if Freauff had simply opened the safe and set fire to the cash itself, this case would not be barred by the economic loss rule. If Freauff simply *took* the cash, rather than setting fire to it, it is no less properly conceptualized as involving damage to property. And that should not change if Freauff stole electronic funds, as opposed to hard cash.

Whether abstract items are chattel, and therefore property, for purposes of conversion is a somewhat unsettled question. Courts have observed that the "traditional rule \*\*\* that conversion will lie only for the taking of tangible property, or rights embodied in a tangible token necessary for the enforcement of those rights," has been "relaxed in favor of the reasonable proposition that any intangible generally protected as personal property may be the subject matter of a suit for conversion." *Pearson v. Dodd*, 410 F2d 701, 708 n 34 (DC Cir 1969) (citations omitted). Similarly, the Ninth Circuit noted that "[v]irtually every jurisdiction" has, to some degree, discarded the traditional limitation that applied conversion actions only to tangible goods." *Kremen v. Cohen*, 337 F3d 1024, 1030 (9th Cir 2003) (interpreting California law; holding that plaintiff could maintain an action for conversion of an internet domain name). In that same vein, the Oregon Supreme Court found that an attorney's misappropriation of money in a client's trust account constituted conversion of chattel. *In re Martin*, 328 Or 177, 184 n 1, 970 P2d 638 (1998).

No Oregon case has previously considered whether conversion of monies, in particular nonphysical electronic funds, constitutes harm to property. However, I can conceive of no logical reason why it would not. Here, the theft of a specific amount of currency is the core of this case, and all consequential damages flow from that singular sum. In short, this is a case involving property, the classic and archetypal limiter that renders the economic loss rule inapplicable.

However, even if this case did not involve the theft of money, or even if preservation prevented us from deciding

the matter on that point, dismissal under ORCP 21 A(8) for reasons of the economic loss rule would be inappropriate because of the statutory duties at play, as well as the special conditions of probation that governed the relationship between Clackamas County Community Corrections Department, Freauff, and the limited class of people that were her known likely future victims: her employers.

A limiter for purposes of the economic loss rule can be an additional source of duty beyond the common law. We have identified a wide array of potential duties. Duty can be present in "the nature of the parties' relationship." *Onita*, 315 Or at 160. "[T]he crucial aspect of the relationship is not its name, but the roles that the parties assume." *Strader v. Grange Mutual Ins. Co.*, 179 Or App 329, 334, 39 P3d 903, *rev den*, 334 Or 190 (2002). We have noted that a contract can give rise to a duty. *See, e.g.*, *Harris*, 344 Or at 308; *Onita*, 315 Or at 160-61. Duty can be created by statute or ordinance when such legislative action was "intended to create a duty" beyond its goal of simply "protecting the public interest." *Loosli v. City of Salem*, 215 Or App 502, 507, 170 P3d 1084 (2007), *aff'd*, 345 Or 303, 193 P3d 623 (2008); *see also Nearing v. Weaver*, 295 Or 702, 712, 670 P2d 137 (1983). And duty can be created by operation of a court order. *McEvoy v. Helikson*, 277 Or 781, 785, 562 P2d 540 (1977). As we noted in *JH Kelly, LLC*:

> "No Oregon case, however, has sought to foreclose other potential limiters that might render the economic loss rule inapplicable. Ultimately, the application of the rule cannot be divorced from the pragmatic concerns that birthed it. *Ore-Ida Foods*, 290 Or at 917 ('We believe that the denial by other courts of claims for economic loss arising from injury to third persons, although phrased in terms of lack of foreseeability, duty and proximate cause, actually reflects their policy decision to limit recovery of such damages.'). 'Even if liability for indirect economic consequences of negligence may in some cases be too broad and open-ended to be endured, care should be taken to see whether that is true in all types of situations; if it is not true, one must examine whether a rule may be fashioned to separate the wheat from the chaff.' *James*, 25 Vand L Rev at 50."

305 Or App at 575.

First, probation officers are subject to a duty beyond the common law—a duty found in statute. ORS 137.630 provides:

"(1)    The duties of parole and probation officers * * * are:

"(a)    To make investigations and reports * * * as are required by the judge of any court * * *.

"* * * * *

"(e)    To keep informed concerning the conduct and condition of persons under their supervision by visiting, requiring reports and otherwise.

"(f)    To use all suitable methods, not inconsistent with the condition of probation or program participation, to aid and encourage persons under their supervision and to effect improvement in their conduct and condition.

"* * * * *

"(h)    To perform other duties not inconsistent with the normal and customary functions of parole and probation officers as may be required by any court * * *."

ORS 137.630 is similar to the statutory duty the Supreme Court recognized in *Brennen v. City of Eugene*, 285 Or 401, 411, 591 P2d 719 (1979). There, the court considered a claim of negligence against a city in performing duties obligated by statute, as opposed to court order. As the court described:

"[P]laintiff was riding as a paying passenger in a taxicab operated by Terminal and was injured when the cab collided with the rear end of another automobile. * * *

"Plaintiff then brought the present action against the City of Eugene, alleging that the City and its employees were negligent in issuing the license to Terminal when its application disclosed that it failed to meet the minimum liability insurance requirements."

*Id.* at 404. The court held that the licensing ordinance created a duty on the part of the city employee to act in accordance:

"The agent had an employment responsibility to process license applications pursuant to the requirements of the ordinance. Under general principles of common law negligence, the agent was required to perform this duty so as to avoid creating a foreseeable risk of harm to others.

"* * * * *

"Defendant argues that despite the provisions of ORS 30.265 it should nevertheless escape liability because the agent's duty runs only to the public generally, not to individual members of the public. Defendant relies on numerous cases for this proposition * * *. These cases, which involve a failure on the part of public officials to act at all, involve considerations quite different from those involved in a case such as this, where an act is alleged to have been performed and performed negligently."

*Id*. at 407-09. Here, ORS 137.630 imposes a duty, just as did the statute in *Brennen*. It is true, *Brennen* did not address the economic loss rule. It rather stands, more broadly, for the uncontroversial notion that statutes can create duties. The economic loss rule does not require a special kind of duty, or a duty that is somehow unique. It merely requires a duty *beyond the common law*. *Onita*, 315 Or at 159. In this case, the statutory duties imposed on probation officers—in particular the duty "to keep informed concerning the conduct and condition of persons under their supervision"—sits outside the common law, and its presence renders the economic loss rule inapplicable in this circumstance.

In addition to those statutory duties, in this case the court crafted special conditions of probation, pursuant to its authority under ORS 137.540. Probation, like incarceration, is a sentence. *Holcomb v. Sunderland*, 321 Or 99, 104, 894 P2d 457 (1995) ("[I]t can no longer be said that probation is not a sentence or that probation is an alternative to a sentence. Presently, probation is a sentence."). One aspect of any sentence—probation or incarceration—involves the protection of future potential victims; the Oregon Constitution requires it. *See* Or Const, Art I, § 15 ("Laws for the punishment of crime shall be founded on these principles: protection of society, personal responsibility, accountability for one's actions and reformation."); *State v. Fudge*, 297 Or App 750, 760, 443 P3d 1176, *rev den*, 365 Or 819 (2019) (although

court had erred in failing to account for defendant's intellectual disability for proportionality purposes, it was not improper for the trial court to emphasize "the vulnerability of the four-year-old victim and the need to incapacitate defendant and specifically deter him from committing future crimes against other children").

A court has authority to impose a variety of sanctions for a failure to abide by special conditions of probation. *See, e.g.*, ORS 137.540(7) ("Failure to abide by all general and special conditions of probation may result in arrest, modification of conditions, revocation of probation or imposition of structured, intermediate sanctions * * *."). Additionally, a court may sanction a failure to abide by special conditions of probation through punitive contempt, just as any other court order. *State v. Walton*, 215 Or App 628, 630, 170 P3d 1122 (2007), *rev den*, 344 Or 671 (2008) ("[W]e hold that the prosecution may charge a defendant with contempt for an act that also constitutes a violation of a condition of probation.").

The special conditions of probation in this case are indistinguishable from the court order involved in *McEvoy*. There, the Supreme Court considered a court order that

> "[p]etitioner (mother) and her husband shall forthwith deliver to the attorney for Petitioner (defendant) all passports in their possession. Said passports shall be delivered to an attorney for Petitioner in Santa Cruz, California, that they be returned upon written instructions, approved by the attorney for Petitioner and the attorney for Respondent, the same to be returned to Petitioner when the child has been returned to the Respondent (plaintiff)."

277 Or at 783.

In *McEvoy* the court concluded two things; first, that the intent of the court order was a question of fact; second, that the presence of the court order was sufficient to create an issue of fact that would take the matter outside the confines of the economic loss doctrine:

> "[I]t appears from the complaint and from the terms of the attached stipulation and order that at the time of the stipulation and order all parties to the stipulation knew, as well as the court, that Susan Lee McEvoy was then a citizen of

Switzerland. *The finder of facts could properly infer from all of such facts appearing in the complaint and in the stipulation and order, if supported by evidence on trial, that the primary purpose of the provisions requiring her to surrender her passport and requiring that it be returned only 'when the child has been returned' to plaintiff, was to protect plaintiff* against the happening of that very danger—*i.e.*, that it was foreseeable that she might not return the child, but take it with her back to Switzerland."

*Id*. at 787-88 (emphasis added).

In light of *McEvoy*'s holding that the "primary purpose" of the court order was inferable by a factfinder, I cannot join the majority's conclusion that a "purpose" of a special condition of probation memorialized in a criminal judgment has no factual component and is purely a question of law. *See* 316 Or App at 583. We review the grant of a motion to dismiss for legal error, assuming the truth of all well-pleaded facts alleged in the complaint. *Doe v. Lake Oswego School District*, 353 Or 321, 323, 297 P3d 1287 (2013); *Hale v. State of Oregon*, 259 Or App 379, 382, 314 P3d 345 (2013), *rev den*, 354 Or 840 (2014); *Becker v. Pieper*, 176 Or App 635, 641, 32 P3d 912 (2001). Accordingly, when plaintiff pleaded that "[t]he primary purpose of each of these special conditions of probation were for the protection of the financial interests of any employer or potential employer of Ms. Freauff" that is a fact—or at least a mixed question of fact and law—that we must accept as true under our standard of review.

Here, the special conditions of probation are the equivalent of the court order in *McEvoy*. Freauff was "prohibited from taking employment involving the handling of money * * * without the written permission of the probation officer." That Freauff was required to "advise current and any future employer including temporary agencies of this probation and nature of the crime. Probation officer may discuss details of the crime of conviction with employer(s)." In addition, Freauff was to "provide her probation officer with employment information and allow *communication between the probation officer and employer for purposes of monitoring compliance* with probation conditions." (Emphasis added.) A factfinder could reasonably conclude that those special conditions contemplate the danger Freauff possesses to

potential employers and exist for the benefit of protecting potential future victims, like plaintiff.

Finally, because I would reach a different result from the majority, I address an additional line of argument from defendants. Defendants argue that this case is controlled by a series of decisions: *Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993); *Kim v. Multnomah County*, 138 Or App 417, 423-24, 909 P2d 886 (1996), *aff'd*, 328 Or 140, 970 P2d 631 (1998); and *Washa v. DOC*, 159 Or App 207, 979 P2d 273 (1999), *aff'd by an equally divided court*, 335 Or 403, 69 P3d 1232 (2003). Defendants' reliance on those cases is misplaced.

*Buchler* involved a suit, in negligence, against a corrections officer who left keys in a work crew van that was subsequently stolen by a prisoner. That prisoner, upon escaping, committed violent crimes against persons. *Buchler* began by adopting section 315 of the *Restatement (Second) of Torts*:

> "Section 315 of the *Restatement (Second) of Torts* (1965) states the general principle that '[t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another' *unless* there is a special relationship between the actor (defendant) and an injured party (plaintiff). That rule of common law described in section 315 applies in this case to support exclusion of liability because the actor is the defendant and plaintiffs are members of the general public."

316 Or at 505 (emphasis in original).

Next, however, the court adopted section 319 of the *Restatement (Second) of Torts*:

> "Section 319 describes an exception to the rule in section 315 declaring liability for one in the status of a jailer. Section 319 states a duty that may exist between a defendant jailer having custody of a prisoner and third persons whom the prisoner may harm. That section provides:
>
> > "'Duty of Those in Charge of Person Having Dangerous Propensities
> >
> > "'One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm

to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.'"

"This court has not previously expressed whether Oregon law is consonant with section 319. The majority of jurisdictions appear to apply common-law principles that are like section 319 in these types of cases. Many jurisdictions simply adopt *Restatement* section 319, by reference, as the law of that state. * * * We hold that the common-law rule, delineated by section 319 to define a custodian's duty in modern times, is the law of this state as well. That law defines a custodian's duty concerning a prisoner in Oregon."

*Id.* at 506.

In *Kim*, we considered a case involving claims of negligence by county supervision officers after an offender robbed and assaulted a couple following his release, specifically:

"Plaintiffs brought negligence and negligence *per se* claims against defendants, alleging that defendants were negligent in failing to inform the judge at the probation violation hearing that Lawrence 'had been in custody for two counts of Robbery I and was still in custody awaiting arraignment for one count of [UUMV].' They also allege that defendants were negligent in failing to inform the court at Lawrence's arraignment for UUMV 'of Lawrence's custody on the two counts of Robbery I and his Assault IV probation violation warrant, arrest and custody.' Finally, they argue that defendants were negligent in failing to issue a detainer warrant against Lawrence which they say could have kept him in jail for up to 15 days."

138 Or App at 420. We discussed *Buchler*, noting the Supreme Court's adoption of section 319 of the *Restatement*, and concluding that

"The policy underlying section 319 is that, because custodians or those who have the ability to control third persons are able to foresee the risk created by the person under their control, they are required to take precautions accordingly. We think it is more in keeping with the policy underlying the rule to require that the third person be in the defendant's custody or under its control at the time of the negligent act before liability under section 319 attaches."

*Id.* at 423-24.

In *Washa*, we considered a plaintiff's claim that the Department of Corrections failed to adequately supervise a parolee with a history of violence against women. 159 Or App at 210, 214. There, defendant argued that *Buchler* and *Kim* prohibited using section 319 of the *Restatement* as a basis of duty because the offender was on probation, not in custody, and accordingly the defendant did not have "the actual ability to control Brown's conduct." *Id.* at 215-16. We agreed, holding:

> "Given those factors, we conclude that this case is not materially distinguishable from *Kim*. Accordingly, we conclude that defendant did not 'take charge' of Brown within the meaning of section 319, and that defendant's relationship to Brown did not create a special duty under section 319."

*Id.* at 221.

In this case, defendants argue that *Buchler*, *Kim*, and *Washa* compel the same result here. As they argue,

> "It is clear that Defendants at no point took charge of Ms. Freauff. In light of the cases discussed above, it is clear that Defendants had no special status or heightened duty as to this Plaintiff. Although Defendants likely had a general duty to the public to take reasonable steps to prevent Ms. Freauff from causing foreseeable harm, that general duty is not, as a matter of law, sufficient to support a negligence claim for purely economic damages."

Defendants misconstrue the scope of those cases. *Buchler*, *Kim*, and *Washa* are pertinent only to the extent that a plaintiff seeks to identify a source of duty, beyond the common-law duty to exercise reasonable care to prevent foreseeable harm, in section 319 of the *Restatement of Torts*, which *Buchler* adopted as part of Oregon law. But nothing in *Buchler*, *Kim*, or *Washa* indicates that section 319 is the *only* permissible source of a duty that can give rise to a negligence claim for a failure to adequately supervise a probationer. Here, plaintiff is not relying on section 319, but rather is relying on a wholly separate and independent source: the court ordered special conditions of probation imposed in this case. Nothing in *Buchler*, *Kim*, or *Washa* forecloses such reliance.

Ultimately, the sole issue on appeal in this case is a red herring. That this case involves the theft of identifiable, specific, monies is more than an adequate limiter, akin to property damage, so as to render the concerns of unbounded litigation that underlie the economic loss doctrine non-existent. Further, even if those concerns were present, there exists a "duty beyond the common law" in this case in the form of both statutory duties, as well as specific conditions of probation. *Hale*, 304 Or at 284. The majority fears that if the court ordered special conditions of probation were sufficient to establish a limiter, "there would be no bar to claims against a supervising agency for every economic loss caused by a person under supervision." 316 Or App at 584. But if Freauff had punched a person, or stolen his truck, or spray-painted graffiti on his business, or any innumerable other acts, no one could ever plausibly argue that the economic loss rule pro-hibited a claim. In short, there may be barriers to bringing a claim of negligent supervision against a probation office, but, under these facts, *the economic loss rule is not that barrier.* Whatever merits this litigation might have in further stages of development, plaintiff properly pleaded a claim for relief, and the trial court erred in granting dismissal under ORCP 21 A(8).

I respectfully dissent.